VIRGINIA FIRE & MARINE INS. CO. v.
ST. LOUIS SOUTHWESTERN RY.
CO.   (No. 6727.)

(Court of Civil Appeals of Texas. Galveston.
Dec. 8, 1914. Rehearing Denied Jan.
7, 1915.)

1. APPEAL AND ERROR ☞1010—VERDICT—CONCLUSIVENESS.

The weight of evidence is for the jury whose finding will not be disturbed on appeal unless the verdict is palpably and overwhelmingly against the evidence or entirely without evidence to support it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982, 4024; Dec. Dig. ☞1010.]

2. NEGLIGENCE ☞134 — FIRES — PROXIMATE CAUSE OF LOSS.

Evidence held sufficient to justify a special finding that fire to a house was not communicated from a heap of burning timbers.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 267–270, 272, 273; Dec. Dig. ☞134.]

3. NEW TRIAL ☞44—MISCONDUCT OF JURORS—COMMENT ON WITNESS—DISCRETION OF COURT.

Adverse comments in the jury room, made by jurors out of their own knowledge, as to the character of witnesses for plaintiff, did not render the denial of a new trial therefor an abuse of discretion, where the evidence of the witnesses was in part uncontradicted and in part immaterial, in view of the jury's findings.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 80–85, 105; Dec. Dig. ☞44.]

4. APPEAL AND ERROR ☞978—REVIEW—DISCRETION OF TRIAL COURT—REFUSAL OF NEW TRIAL.

The exercise of the trial court's discretion in denying a new trial for misconduct of jurors will not be disturbed on appeal, except where clearly abused.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3866–3870; Dec. Dig. ☞978.]

Appeal from District Court, Angelina County; L. D. Guinn, Judge.

Action by the Virginia Fire & Marine Insurance Company against the St. Louis Southwestern Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

W. J. Townsend, Jr., of Lufkin, for appellant. E. B. Perkins and Daniel Upthegrove, both of Dallas, Kester W. Denman, of Lufkin, and Marsh & McIlwaine, of Tyler, for appellee.

McMEANS, J. Appellant, the Virginia Fire & Marine Insurance Company, issued to Harrington Lumber Company a policy of insurance, insuring against loss by fire the lumber company's storehouse and the contents thereof, situated in Cowart, Tex. While said policy was in force, the storehouse and the contents thereof were destroyed by fire, and the insurance company, in fulfillment of its contract of insurance, paid the Harrington Lumber Company the sum of $1,432.18 in settlement of the loss. The insurance policy provided in effect that, in case of the destruction of the property insured by fire through the act or neglect of any person or corporation, the insurance company should, on payment of the loss, be subrogated to the extent of such payment to the insured's right of recovery therefor. The insurance company asserting its subrogation to the rights of the lumber company, and claiming that the destruction of the house and its contents was caused by the negligence of the servants of the appellee railway company, brought this suit to recover the amount paid by it to the lumber company. The case was submitted to a jury upon special issues, and upon return of the verdict a judgment was entered in favor of appellee railway company, from which the appellant insurance company has appealed.

[1] Appellant by its first assignment of error complains in effect that the verdict of the jury is not supported by a preponderance of the testimony. Manifestly this assignment presents no question which this court is at liberty to consider. Appellate courts are not concerned with the question of the preponderance of the testimony, as that is a matter for the jury to determine. It is only where the verdict is without evidence to support it, or where it is so against the overwhelming weight of the evidence as to be clearly wrong, that the appellate courts can interfere. However, the second assignment sufficiently presents the question sought to be raised by the first. It is as follows:

"The verdict of the jury and the judgment of the court is contrary to the law and the evidence in that the evidence adduced upon the trial of the case showed conclusively and was undisputed to the effect that the fire which destroyed the store or commissary building of said Harrington Lumber Company originated from and was communicated to the store or commissary building from burning bridge timbers adjacent to defendant's railroad track."

The evidence sufficiently proved the issuance of the policy by appellant to the Harrington Lumber Company, the destruction by fire of the property insured, the payment by appellant of $1,432.18 to cover the loss, and its subrogation to the right of recovery of the insured against any person or corporation whose act or negligence caused the fire. The storehouse was situated on the edge of appellee's right of way and had a platform extending upon the right of way a short distance, which was jointly used by the railway com-

pany and the lumber company for the delivery of freight and as a passenger platform. A short distance away was a small bridge on the railroad, crossing a creek. On the day of the fire a bridge gang was engaged in repairing this bridge, and in the course of the repairs removed several old, heart pine timbers from the bridge, and these were piled and set on fire by appellee's bridge gang foreman. It was appellant's theory that fire was communicated from the burning timbers to the house. The distance from the house to the pile of timbers was 75 feet. No one testified as to when the timbers were set on fire, except the foreman, who testified that he started the fire between 2 and 3 o'clock in the afternoon. Several witnesses testified that they saw the burning timbers between 5 and 6 o'clock, and two of these about that time passed on horseback and said that the fire was then in full blast, and one of them said the blaze therefrom was as high as his head on horseback. The burning of the store was first discovered between 11 and 11:30 o'clock that night. Moore Harrington claimed to be the first to make the discovery, and he said that when he first saw it the fire was on the southwest corner on top of the building, which was the corner nearest to the pile of timbers, and that the wind was blowing in the direction of the house from the pile of timbers. He lived only a short distance away, and went at once to the store; but when he got there the whole west end of the building was on fire, and it was then too late to save the building or any of its contents. It was testified by this witness that there had been no fire in or about the store that day, except the burning timbers, and he and other witnesses testified that the sawmill nearby had been shut down for some time, and that there was no fire in the slab pit nor elsewhere about the mill.

J. Q. Adams, the foreman of the bridge gang, testified that the old timbers taken from the bridge were piled in two piles, one being about 75 feet from the storehouse, and the other about 15 feet further away; that after setting fire to both piles, between 2 and 3 o'clock in the afternoon, he left, but that he passed the place later, between 5:30 and 5:45 o'clock, and that the fire had then burned down to a bed of coals. He further testified that there was no wind blowing that night.

Another witness, G. C. Beckham, testified that he passed the place between sundown and dark and saw the fire in the burning timbers, and it was "just what I would call a bed of coals then; a few chuncks around in there burning yet; but I would just call it a bed of coals then."

It was shown by W. G. Harrington, president of the lumber company, that the house was covered with a roofing on the order of rubberoid, supposed to be fireproof, and that he bought it for that.

Another witness testified that the signs on the trees indicated that on the night of the fire the wind was blowing from the house toward the pile of timbers.

This is the substance of all the testimony offered on the trial.

Special issue No. 1, submitted by the court to the jury, reads as follows:

"Did the fire that burned the commissary or store building of the Harrington Lumber Company originate, and was it communicated from the burning bridge timbers adjacent to defendant railroad company's track?"

To this question the jury answered, "No." The jury were instructed that, in the event they answered the first question in the negative, they need not answer any of the others.

[2] We are of the opinion that the testimony warranted, although it did not compel, a finding by the jury that the fire was communicated to the building from the burning timbers. The jury may have concluded that the timbers were set on fire between 2 and 3 o'clock, and that between 5:30 and dark had been reduced to a bed of coals; that either no wind was blowing or was blowing from the direction of the house toward the burning timbers; that the house did not catch fire until about 5 or 6 hours after the timbers had been reduced to coals; that the fire, when first discovered, was burning on the roof, and that the roofing was fireproof, and that therefore the blaze originated inside of the house, and when first seen was breaking through the fireproof roof, and from all these facts may have concluded that the fire was not communicated from the burning bridge to the house. Appellate courts are not authorized to set a verdict aside unless the finding of the jury is against the undisputed testimony, or so against the great weight and preponderance of the testimony as to be clearly wrong; and we cannot say, from the testimony in this case, that the verdict was without evidence to support it, or that it was clearly wrong. The assignment therefore must be overruled.

[3, 4] The only other assignment presented by appellant complains of the refusal of the court to grant it a new trial on account of improper conduct of some of the jurymen after the jury had retired and were deliberating upon their verdict. It was shown that J. H. Clayton, one of the jurymen, spoke of G. W. Harrington, a witness for appellant, in exceedingly harsh terms, saying, among other things, that his general reputation for truthfulness and honesty was bad; that he would not pay his debts, and was of dissolute habits and a notorious liar, and that from what he knew of his son, the witness Moore Harrington, he would not "put anything by them"; and that he believed from what he knew of the two personally they set the store building on fire. Another juryman stated that he knew both the Harringtons personally, and that both of them were "damn rascals"; that during the trial he dunned Moore Harrington for a debt of $3 which Harrington owed him, and told Harrington that if he did not

pay the debt when the case was over he (the witness) would "whip hell out of him." Another juryman, Lem Cheatham, stated that, from what he knew of W. G. Harrington's reputation for truth, veracity, and fair dealing, it was bad. All this was elicited from certain of the jurymen who testified before the court at the time appellant's motion for a new trial was being urged, and is incorporated in a bill of exceptions taken to the action of the trial judge in refusing to grant the motion. To the bill of exceptions the judge added the following qualifications:

"The above and foregoing bill of exceptions is approved with the following qualifications: That the evidence of the juror Allen was considered immaterial for the most part inasmuch as this case was tried on special issue, 'Did the fire originate from the burning timbers by the side of the railroad track?' and the jury was instructed to answer this special issue, 'Yes,' or 'No,' and if said special issue should be answered, 'No,' then the other issues submitted need not be answered by the jury, and the jury did not answer special issue No. 1, which answer of the jury altogether eliminated W. G. Harrington's evidence from the case, as the evidence of all witnesses, including W. G. Harrington himself, is conclusive that W. G. Harrington was not a witness as to the cause of the fire, he not being present or in the county at all when the fire occurred which burned the commissary, and the evidence of Moore Harrington showing that he discovered the fire about 11 or 12 o'clock at night, and on reaching the burning house he found the same to be on fire on the top and at one corner, and that said commissary was about 75 feet from the place where the timbers had been burned. Several other witnesses testified to the same effect, and the jurors Bonner and Allen each testified that practically all the other witnesses had testified to the same thing that Moore Harrington did and that the jury believed the statements of said witnesses including Moore Harrington, but that this evidence did not show that the fire was communicated from the burning timbers. Therefore whether the jury believed Moore Harrington to be credible or otherwise was not a material inquiry, as all of the evidence corroborated him on the questions he testified as to the origin of the fire. The further qualification that the witness or juror Allen testified that in the beginning ten of the jurors wanted to return a verdict on first ballot for the defendant company, and that there were only two jurors for the plaintiff, and in a very short time these two agreed with the other members of the jury, and the verdict was returned accordingly, and that the jury decided the case on the law and evidence as introduced and charged by the court that the talk of Clayton and other jurors as to W. G. Harrington's and Moore Harrington's standing had no effect on the issue as decided by the jury; further Allen did not say that or testify that W. G. Harrington set fire to the house or that Clayton so informed the jury, as the evidence showed that W. G. Harrington was not at the place when the house burned, but that he was in Nacogdoches, some 30 or 40 miles away. With these qualifications this bill of exception is approved and ordered filed."

While the conduct of the jurymen was exceedingly reprehensible, still the granting of a new trial on account of the misconduct of the jury is a matter committed to the discretion of the trial judge (R. S. art. 2021), and appellate courts are not authorized to review his action in refusing to grant a motion for new trial, unless it be made clearly to appear that he abused that discretion in refusing to grant the motion. We cannot say, in view of the judge's qualification of the bill of exceptions, that such discretion was abused. Railway v. Coffman, 160 S. W. 145; Railway v. Blalack, 128 S. W. 706; Railway v. Brown, 140 S. W. 1172; Texas Co. v. Earles, 164 S. W. 28.

We find no reversible error in the record, and the judgment of the court below is therefore affirmed

Affirmed.

---

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes