Reynolds v. Dechaums.

SHERMAN REYNOLDS AND ANOTHER V. HENRY M. DECHAUMS AND WIFE, ADMINISTRATORS.

A surety on a note, given to an administrator, is not released from liability, by the failure of the latter, to require two sureties on the note, unless he was induced to sign it, by an understanding, to which the administrator was privy, that a co-surety should be obtained.

A contract cannot be avoided for drunkenness, unless it be so excessive as to render the party incapable of consent, or, for the time, to incapacitate him from exercising his judgment.

Whether or not a party was incompetent to contract, by reason of drunkenness, *is a question of fact for the jury.*

The employment of a person, to bid for the owner, will not necessarily, as a matter of law, avoid a public sale.

The vendor may, with the *bonâ fide* intention of preventing a sacrifice of the property, and not for the purpose of enhancing the price above its real value, and when the purchaser is not induced thereby to bid more than it is worth, employ a by-bidder, without the sale being thereby avoided.

Whether the employment by the owner of a by-bidder, is *bonâ fide,* or for the fraudulent purpose of enhancing the price by a pretended competition, is a question of fact to be determined by the jury.

ERROR from Bastrop. Tried below before the Hon. Alexander W. Terrell.

This was a suit by Henry M. Dechaums, and his wife, Susan N. Dechaums, as administrators of Samuel B. Morris, deceased, against Sherman Reynolds and Preston Conlee, on a note for $2600, given by them for a lot in the town of Bastrop, purchased by Reynolds, from the administrators of Morris, at a sale thereof, made by order of the County Court of the said county.

The matters of defence, relied upon by the defendants, are sufficiently apparent from the opinion. There was a judgment in favor of the plaintiffs, from which defendants prosecuted their writ of error.

*Hancock & West,* for the plaintiffs in error.

*George W. Jones,* for the defendants in error.

Reynolds v. Dechaums.

WHEELER, C. J.—It is objected to the judgment, that the note sued on was not binding upon the defendant, Conlee, because not signed by another surety besides himself. We do not think the objection well taken. The taking of security, is solely for the benefit of the estate. If the administrator does not require the security, which the law contemplates, but sees proper to dispense with it, he may thereby incur personal liability to the estate; but the other contracting parties are not, in consequence, absolved. It has been heretofore decided, that the failure of the administrator to secure the debt, by a mortgage upon the property, does not release the sureties; and, upon the same principle, the failure to give two, will not discharge the one who has contracted as surety, unless he had been induced to sign, by an understanding, to which the administrator was privy, that a co-surety should be obtained; of which there is no evidence in the present case.

It is insisted, for the appellants, that the note sued on is not binding upon them, because the principal therein was intoxicated, when he bid off the property for which it was given. The witnesses agree, that the principal was intoxicated, at the time of the sale. By some of them, he was thought to be incompetent to transact business. This was their opinion. But others were very decidedly of a different opinion; and his conduct, as testified to, is quite consistent with the belief, that he was competent to contract. He was not inattentive to his interest; or too much intoxicated to dissuade others from bidding against him; and seems to have been well aware of what he was doing. Drunkenness, to afford a ground for avoiding a contract, must be so excessive, as to render the person incapable of consent; or, for the time, to incapacitate him from exercising his judgment, (Story on Cont. § 45,) which does not appear to have been the case in this instance. The court, very properly, left the question of his capacity to contract, to the decision of the jury, and their verdict is not unsupported by evidence.

The question, upon which there seems most cause to hesitate, is, as to the propriety of the charge of the court, upon the effect

of employing, what is called a by-bidder; that is, as it must be understood in this case, a person employed by the vendor, to bid up to a certain sum, in order to prevent a sacrifice of the property. Upon the question, whether this will avoid the sale, there is an irreconcilable conflict in the authorities. The doctrine of the English courts has fluctuated, since Lord MANSFIELD pronounced the judgment of the King's Bench, in Bexwell v. Christie, Cowp. Rep. 396, and is not, perhaps, now clearly settled; and the American authorities are conflicting. (Story on Sales, § 482, n. 4, 2d edit., where the authorities are reviewed, or referred to.)

To enter, in this place, upon a review of the decided cases, would be an unprofitable consumption of time. They are in conflict, and cannot be harmonized. Judge STORY, (in Veazie v. Williams, 3 Story, Rep. 624,) approves the opinion of Sir William GRANT, in Smith v. Clarke, 12 Ves. Rep. 477, 482, where he questions the soundness of the doctrine of some of the earlier cases, and considers that the vendor, without making the fact publicly known, may lawfully employ a person to bid, to prevent a sale of property at an under value. Chancellor KENT, while he considers the original doctrine of the King's Bench, the more just and salutary doctrine, says, (2 Kent, Com. 538, 539,) "It would seem to be the conclusion, from the latter cases, that the employment of a bidder by the owner, would, or would not be a fraud, according to circumstances, tending to show innocence of intention, or a fraudulent design. If he was employed *bonâ fide*, to prevent a sacrifice of the property, under a given price, it would be a lawful transaction, and would not vitiate the sale. But if a number of bidders were employed by the owner, to enhance the price by a pretended competition, and the bidding by them was not real and sincere, but a mere artifice, in combination with the owner, to mislead the judgment, and inflame the zeal of others, it would be a fraudulent and void sale." And this, Judge STORY thinks, "the true, and just, and satisfactory result."

The weight of authority of adjudged cases, seems to be, that

the employment of a person to bid for the owner, will not necessarily, as matter of law, have the effect to avoid the sale; and this doctrine seems most consonant to principle. The ground upon which it has been supposed to have that effect, is, that it is a fraud upon the buyer. But if a person be employed to bid, merely for defensive precaution, in order to prevent a sacrifice of the property, there certainly is no fraud intended; and if the price of the property be not thereby enhanced above its real value, it would seem that the purchaser is not injured. He gets the property for its value, and what he was willing to give; and that is all that justice and fair dealing would seem to require. It seems difficult to characterize such a sale, where the buyer exercises and acts upon his own judgment, and is not misled to his injury, as a fraud upon the buyer. In sales of the property of estates especially, where the rights of the widow and the orphan are concerned, and where there are so many inducements and opportunities for parties, by combinations or otherwise, to stifle bidding, and prevent fair competition, and thus to obtain, at a sacrifice, the property of those, who are least capable of protecting their own interest, it seems but reasonable and just, that the administrator should be allowed such defensive means, to protect estates from sacrifice and ruin. The public are not injured, nor can the purchaser have just cause to complain, that he was prevented from obtaining the property at an under value. No considerations of justice, or public policy, require that greater opportunities should be afforded, of speculating upon deceased persons' estates.

The present case very well illustrates the propriety of such defensive means, in the power of the administrator. It is in evidence, that the defendant, and at least, one other person, had attended the sale, intending to bid as high as $3000 for the property. But the defendant, by a personal appeal, dissuaded that person from bidding; and then was finally enabled to bid off the property, at $400 less than it would have brought by fair competition. This was a fraud upon the estate, for which the sale might have been avoided by the administrator. (2 Kent,

Com. 539.) And the defendant comes into a court of equity, to say the least, with a bad grace, to ask the rescission of a contract, on the ground of fraud, when, by his own improper conduct, be sought and obtained an unfair advantage in the contract. Had he acted fairly, there would have been no occasion for the employment of a by-bidder, of which he complains. That became necessary to counteract his improper practices, in preventing fair competition by persons wishing to purchase the property; and it would seem, that he should not be heard to complain of that defensive measure, which his own improper conduct rendered necessary. He does not seem to be in a situation to ask the aid of a court of equity in his behalf. That aid, it is said, is not extended to those who do not come with clean hands.

By such improper practices as the defendant resorted to, estates might be ruined, if those who represent them, had not the means of preventing a sacrifice of the property. Administrators occupy a situation, which makes it peculiarly incumbent upon them, to take care not to permit a sale at an under value; and where they employ a person to bid, merely to prevent such a consequence, and nothing more is done, we do not think it should be deemed, in itself, a fraud, and to avoid the sale. We think with Sir Wm. GRANT, in Smith v. Clarke, 12 Ves. 482; where he said, "it would be too much for me to say this is, in itself, a fraud." If it be a question of fraud in fact, as it would seem it is, it ought, in our practice, to be left to the jury to decide, whether the purchaser was, in fact, defrauded in the particular case. The question has in most cases arisen, and been discussed in courts of chancery, where the court decides the fact, as well as the law. But in our practice, as the decision of the fact, is in all cases referred to the verdict of a jury, it would seem that the question here involved, ought to be referred to their decision, as any other question of fraud in fact. And if, as the jury were, in effect, instructed, the bidding by the plaintiff's attorney was with the *bonâ fide* intention of preventing a sacrifice of the property, and not for the purpose of enhancing the price above its

real value, and if the purchaser, was not thereby induced to bid for it, more than it was worth, of which there is no evidence ; in other words, if there was in fact, no fraud practised upon the purchaser, it ought not to be a ground for avoiding the sale.

We think the employment of a person, to bid under circumstances like the present, is not necessarily a fraud upon the purchaser, and that it is a question, which may be properly left to the jury, to decide, whether there was fraud or not, in the sale, under all the circumstances of the case. It was so left to their decision, by the charge of the court in this case. We think the verdict well warranted by the evidence, and are of opinion, that there is no error in the judgment. It is therefore affirmed.

Judgment affirmed.