DECIDED IN

# THE SUPREME COURT

OF

# OREGON.

Argued July 25, decided July 29, rehearing denied December 2, 1913.

## STATE EX REL. *v.* SIEMENS.

(133 Pac. 1173.)

**Statutes—Construction—Intention of Legislature.**

1. The fundamental rule of construing legislative enactments is to ascertain and declare the intention of the legislature as expressed in the statute.

**Depositaries—Construction—Remedial Statutes.**

2. General Laws of 1913, page 515, requiring county treasurers to designate depositaries for county funds, is remedial in character, and should be construed so as to promote the remedy.

**Statutes—Construction—Mandatory and Directory Statutes.**

3. Mandatory provisions of a statute must unfailingly be followed, while directory provisions need not necessarily be followed in the precise manner indicated.

**Statutes—Construction—Mandatory or Directory Provisions.**

4. Where compliance with the particular provision of a statute is a matter of convenience rather than of substance, or where the directions are given with a view merely to the proper and prompt conduct of business, the provision may be regarded as directory.

**Depositaries—Statutory Provisions—Construction.**

5. The provision of General Laws of 1913, page 515, requiring the designation of depositaries of county funds to be made on the first Monday in June, is directory, not mandatory; and, where the act did not go into effect until the day after the first Monday in June, but the intention of the legislature was plain that it should be effective in that year, the county treasurer is required to designate depositaries after the act became effective.

(1)

*Depositaries—Designation—Discretion.*

6.  Under General Laws of 1913, page 515, providing that the county treasurer shall designate such banks as possess the required qualifications for county depositaries, the only discretion allowed the treasurer is to determine whether the bank possesses the required qualification, and a demurrer to a writ of *mandamus* to compel a treasurer to designate a certain bank, which writ alleges that the bank possessed the qualifications, will be overruled.

Mandamus—Grounds—Nature of Act.

7.  *Mandamus* will lie to compel a public officer to perform a duty prescribed by law, but not to control the performance of that duty when the act involves the exercise of discretion.

   [As to *mandamus* against public officers, see note in 98 Am. St. Rep. 863.]

En Banc.   Original *mandamus* in Supreme Court.

Statement by MR. JUSTICE McNARY.

This is an original application in this court for *mandamus* to compel J. W. Siemens, County Treasurer of Klamath County, Oregon, to receive the application of the First National Bank of Klamath Falls, Oregon, to be designated a depositary for county funds under the provisions of Chapter 273 of the General Laws of Oregon for 1913. The alternative writ of *mandamus*, after reciting that plaintiff is engaged in the banking business at Klamath Falls, Klamath County, Oregon, and organized under the laws of the United States of America, avers: That defendant is the treasurer of the county, and on June 3, 1913, plaintiff filed with defendant an application to be designated a depositary of county funds, which application was accompanied by a sworn statement of the financial condition of the bank. That on the day following, the bank renewed its application, and on June 10th, defendant returned the application to plaintiff with the indorsement: "Rejected, J. W. Siemens County Treasurer." That defendant admitted the application was in the proper form. That the securities offered for protection of the county funds were good and genuine, and the proper kind to be accepted to secure deposits of county

funds. That as a justification for such rejection, defendant stated he was vested with absolute discretion to accept or refuse any application, even though the applicant was qualified and had performed the acts required by statute. Seasonably, following the service of the writ, defendant appeared by a demurrer, presenting the following objections thereto: (1) That it appears on the face of the writ that the matters stated do not entitle plaintiff to relief; (2) that the writ does not show any reasons why adequate and prompt relief might not be obtained in the Circuit Court; (3) that the writ contains no statement calling for the exercise of the discretionary jurisdiction of this court; (4) that there is a defect of parties defendant on account of the omission of the district attorney; (5) that plaintiff failed to comply with the provisions of rule 33 (56 Or. 626, 117 Pac. xiii), requiring the application for the writ to be served on defendant.                        DEMURRER OVERRULED.

For the plaintiff there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. George G. Bingham, Messrs. Kuykendall & Ferguson* and *Mr. J. C. Rutenic,* with oral arguments by *Mr. Crawford* and *Mr. Bingham.*

For the defendant there was a brief and an oral argument by *Mr. Thomas Drake.*

MR. JUSTICE McNARY delivered the opinion of the court.

The act under consideration was passed by the House of Representatives, February 14, 1913, by the Senate the twenty-fifth day of the month, received by the executive department on February 27th and filed with the Secretary of State on the same day. By reason of matters purely political the legislature did

not adjourn until March 2d, and for that account the act .did not become effective until Tuesday following the first Monday of June, 1913, which was the 3d day of the month.

Those provisions of the act pertinent to an understanding of the statute recount that the county treasurer of the several counties of the state shall, on the first Monday in June of each year, designate such banks and trust companies within the respective counties as have become eligible county depositaries, for the purpose of receiving on deposit funds of said county. The applicants must qualify in this manner: They shall, on or before the first Monday in June of each year, file applications in writing with the county treasurer, accompanied by a sworn statement of their financial condition. The county treasurer shall pass upon the same, and shall stamp upon the application either the word "Approved" or "Rejected," append his signature, and submit the same to the district attorney, together with all securities offered for protection of the county funds, who shall, upon receipt thereof, and after examination, advise the county treasurer as to their legality. No securities shall be approved, unless their market value shall equal the amounts of deposits applied for by any bank. The statute further provides that the county treasurer shall deposit, and at all times keep on deposit in the county depositaries, all of the moneys of the county coming into his hands, and which funds shall be deposited in the depositaries in proportion that the capital and surplus of the depositaries bear to the total public funds; that such deposits shall be subject to payment when demanded by the county treasurer, and the depositaries shall be required to pay the county for the privilege of holding the funds, interest at the rate of 2 per cent per annum on the daily average deposits.

We believe there are but two questions to be considered: (1) Does the writ contain facts sufficient to warrant plaintiff relief? (2) Is the county treasurer privileged to exercise absolute discretion in refusing the application of a prospective depositary?

On the surface of this proceeding it is obvious the statute did not become vitalized until a day subsequent to the time specified in the act for the selection of depositaries, and, on account thereof, it is argued defendant could designate no depositaries until the intervention of a year; that is, until the first Monday in June, 1914.

1, 2. These conditions suggest a careful analysis of the statute. It will not be denied the great fundamental rule in construing legislative enactments is to ascertain and make efficacious the intention of the law-making body, keeping in mind the intention as expressed in the statute; and, when that legislative will is ascertained, no other judicial duty need be performed than to declare such intention. Confessedly, the statute under consideration is remedial in character, and that the words therein are to be construed beneficially, so as to promote the remedy contemplated by the act.

3. Another formula of statutory construction is that mandatory provision of a statute must unfailingly be followed, while directory provisions need not necessarily be followed in the precise manner indicated in the law. If the subject matter and language of the act be examined in the light of these principles, an interpretation both rational and wholesome will appear. That it was the manifest intention of the legislature to have the act vital on the first Monday of June in the year of its passage is apparent from the early course the enactment took through the legislature. That the first Monday of June expired one day earlier than the maturity of the statute was a political con-

tingency not anticipated by the framers of the act or the law-making body. That the statute is remedial in its nature plainly appears from a casual reading of the enactment.

4. However a graver question arises when we take up the consideration whether the particular provision in thought is to be regarded as directory or mandatory. We think the true rule is expressed in the following language: ''When the particular provision of the statute relates to some immaterial matter, where compliance is a matter of convenience rather than substance, or where the directions of the statute are given with a view to the proper, orderly and prompt conduct of business merely, the provision may generally be regarded as directory'': *Hurford* v. *City of Omaha,* 4 Neb. 350. To the same effect we cite Sedgwick, Constitutional Law, p. 372; 36 Cyc. 1158. In *People* v. *Lake County,* 33 Cal. 487, a case of recognized similarity, the Supreme Court, speaking through Mr. Justice RHODES, said: ''When a statute specifies the time at or within which an act is to be done, it is usually held to be directory, unless time is of the essence of the thing to be done, or the language of the act contains negative words, or shows that the designation of the time was intended as a limitation of power, authority, or right.''

5. In the determination of the query whether defendant should designate county depositaries regardless of the fact the law became effective a unit of time after the date specified in the statute, significance must be given to the nature of the official act; that is, whether the time prescribed in the enactment is intended as a limitation of time in which official duty must be performed, or whether the designated time was indicated as a convenient period, and merely with a view to the proper, orderly and prompt administration of a public duty. The act before us for construction has fixed the first Monday in June of each year as the day the treas-

urers of the respective counties of the state shall designate banks or trust companies that shall become depositaries for county funds. There is nothing in the nature of the duty indicating it might not be as effectually exercised after the first Monday in June as before that date, had the law been extant. Furthermore, the law contains no prohibition to exercise the selection of the depositaries after the first Monday in June. We are at loss to see where the time specified in the act for the selection of depositaries is of the essence of the statute, or, a matter of substance to the contrary, the law was conceived in the belief that it was promoting the public weal, that a remedy is needed for existing abuse, and that a convenient time should be stated when official duty should be performed. To say the act must be construed as being in a state of repose until the first Monday in June next is placing an interpretation thereon of strict and literal severity. The essence, the very quintessence, of the statute is to establish county depositaries and to divert into the public exchequer moneys in the way of interest that had heretofore flowed into private reservoirs, and to hold otherwise would be placing a premium on form, and minimizing, if not destroying, the effect and value of substance.

6. The concluding question is whether a county treasurer is vested with absolute discretion in rejecting or accepting applications of banks or trust companies for designation as county depositaries.

Section 1 of the act reads: ''It shall be the duty of the county treasurer * * to designate such banks and trust companies * * as have * * become eligible county depositaries. * * The county treasurer shall pass upon the application,'' sign the same, and stamp thereon ''Approved'' or ''Rejected,'' and ''transmit to the district attorney such application, together with

all securities offered for protection of the county funds."

Section 2 provides: "The county treasurer shall deposit, and at all times keep on deposit in the county depositaries, * * all the moneys of the county coming into his hands," etc.

7. Apparently from these excerpts no discretion abides with the county treasurers respecting the performance of official duty which is imperative. The enactment requires the officer to initiate the act which makes the statute a living rule of official conduct, but leaves to the treasurer the freedom to act in all matters pertaining to the selection, rejection or designation of county depositaries, according to his own judgment, honestly exercised. *Mandamus* will lie to compel the execution, by a public officer, of a duty prescribed by law, but not to control the exercise of that duty, when the act to be done involves the exercise of judgment or discretion.

Considering the enactment in question, we believe the county treasurer of the several counties in this state must select depositaries for county funds, subject only to the controlling influences of a sound discretion in the matter of the financial strength and qualifications of a depositary and the form of the application·as detailed by the statute.

The demurrer to the writ must be overruled.

DEMURRER OVERRULED.

MR. JUSTICE BURNETT delivered the following dissenting opinion:

At the suit of the State of Oregon, on relation of the First National Bank of Klamath Falls, an alternative writ of *mandamus* has been issued out of this court, directed to the defendant as county treasurer of Klamath County. It recites that on June 2, 1913, the bank made application to defendant to be designated as a

depositary for county funds, that the application was accompanied by sundry municipal and school district bonds, amounting to $63,150, and an American Surety Company bond of that date for $25,000, and that on the following day the bank renewed its application in the same words, and accompanied by the same bonds, together with a sworn statement of the financial condition of the bank at the close of business May 31, 1913. It is also stated in the writ "that defendant did, on June 10, 1913, unlawfully, and without just or any reason therefor, reject said applications, and returned the same indorsed: 'Rejected.   J. W. Siemens, County Treasurer'—together with said sworn statement of financial condition and said bonds.   That defendant in making said rejection declared and admitted that said application was in proper form, duly and properly made, executed and tendered, and that said bonds were good, genuine and valid bonds, and of a proper kind to be accepted to secure deposits of county funds, but defendant alleged and declared, as a basis and justification for such rejection, that he, as such treasurer, had and was vested with an absolute discretion to accept or reject any application for designation as such depositary, even though the applicant was qualified for such designation, and had performed each of the acts required by law to secure such designation." The application, a copy of which is attached as an exhibit, states that the bank estimates the bonds of the present value of $90,000, and gives a list of the same, and that all the municipal and school district bonds have the proper coupons attached, and the market value of the same is par or more.   Nothing is stated in the writ or in the copy of the application attached as an exhibit about whether the American Surety Company is qualified or not.   It concludes with a direction, in substance, that the defendant designate the relator as a depositary for county funds, or show cause to the

contrary. The defendant demurs to the writ on several grounds, the first of which only is necessary to be considered, namely, "that it appears on the face of said writ that the facts and matter therein stated did not entitle the relator to the relief demanded."

The act of February 27, 1913, being Chapter 273 of the laws of that year, provides: "It shall be the duty of the county treasurers of the several counties of the State of Oregon, on the first Monday in June of each year to designate such banks and trust companies within the respective counties as have, under the provisions of this act become eligible county depositaries for the purpose of receiving on deposit funds of said county and paying out the same on order, or check of the county treasurer. Such banks and trust companies shall qualify as county depositaries as follows: The banks and trust companies, applying to be made depositaries under the provisions of this act, shall on or before the first Monday of June of each year, file application in writing with the county treasurer, said application to be accompanied with a sworn statement of the financial condition of said bank, or trust company at the time said application is made. The county treasurer shall pass upon the application made in compliance with this act and shall stamp upon said application 'Approved,' or 'Rejected,' and the · same shall be duly signed by the county treasurer and it shall be the duty of the county treasurer to transmit to the district attorney such application, together with all securities offered for protection of the county funds, and it shall be the duty of the district attorney upon the receipt of such application, and securities, to pass upon the same, and advise the county treasurer as to their legality." It is also provided, in substance, that before any such application shall be approved, it shall be accompanied by a bond secured by a duly qualified surety company, guaranteeing the

amount of deposits applied for in the said application, or it may be accompanied by other bonds specified in the act. It is also said, in Section 1 of the act, that, "No securities shall be approved unless their market value shall equal the amounts of deposits applied for by any bank."

Section 28, Article IV of the Oregon Constitution states: "No act shall take effect until ninety days from the end of the session at which the same shall have been passed, except in case of emergency. * * *" The session of the legislative assembly at which the act in question was passed ended March 4, 1913. The 90-day period thereafter expired on Monday, June 2, 1913, the same being the first Monday of that month; hence the law became effective only on the day following. The statute is prospective in its terms. On the first Monday of June of the present year there was no law in any way qualifying or repealing the statute making the treasurer the custodian of all the county funds. Hence no petition could regularly have been filed at the time prescribed in the statute, namely, on the first Monday of June, 1913. If the statute had said that petitions should be filed on the second Monday of August or December of each year, no one would contend that the treasurer could anticipate the date on which he could designate the depositaries. The reason of the rule is the same when applied to the actual dates involved. No duty is enjoined upon the treasurer until the time named in the statute. If he can take it upon himself to designate a depositary either before or after the day named in the statute, the exercise of power is discretionary, and cannot be controlled by *mandamus.*

It is said in the law that the petition must be presented on or before the first Monday of June of each year. It is then made the duty of the county treasurer to "pass upon the application made in compliance with

this act." Something more, then, is required of him than to adjudicate whether or not the mere form of the statute is observed. It goes without saying that if the application does not conform to the act in question, the treasurer would be justified in rejecting it; but the new law says that an application made in compliance with the act is still the subject of his consideration, and the law itself prescribes two forms of judgment which the treasurer may adopt, namely, "approved" or "rejected." It must be remembered, also, that the statute further says: "No securities shall be approved unless their market value shall equal the amounts of deposits applied for by any bank." It does not establish any procedure or specify any authority by which this value can be determined. Manifestly that is one of the matters committed to the judgment of the public custodian of funds. It certainly cannot belong to the applicant. It is not reasonable to suppose that the legislature intended that a would-be depositary should be permitted to sit in judgment on its own case and bind the treasurer by its own valuation of the offered security. The treasurer, being the person elected by the people for the purpose of controlling the custody of funds, is in good reason the one to pass upon the value of securities tendered in such cases.

It is said in Section 613, L. O. L., that a writ of *mandamus* "may be issued to any inferior court, corporation, board, officer, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; but though the writ may require such court, corporation, board, officer, or person to exercise its or his judgment, or proceed to the discharge of any of its or his functions, it shall not control judicial discretion." The general rule in such instances is that the court by the extraordinary writ of *mandamus* may compel the

officer to act, but it cannot control the result of his decision. While it commands him to act, it cannot put into his mouth the judgment which he must render. This is not a case of postponed duty. It is argued that if the defendant neglected to appoint a depositary on the date named in the statute, he could be compelled to do the act afterward; but, on the first Monday in June, as we have seen, there was no law requiring the act to be done. It having been required that the petition must be presented on or before the day named, if we regard the plain words of the statute, it must be on the first Monday in June next following when the appointment is to be made. In this case the defendant had acted in one of the only two ways in which the statute says he must act. In the language of Mr. Justice BRADLEY in *United States ex rel.* v. *Black,* 128 U. S. 40 (32 L. Ed. 354, 9 Sup. Ct. Rep. 12) : ''The court will not interfere by *mandamus* with the executive officers of the government in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, the court having no appellate power for that purpose; but, when they refuse to act in a case at all, or when, by special statute or otherwise, a mere ministerial duty is imposed upon them— that is, a service which they are bound to perform without further question—then, if they refuse, a *mandamus* may be issued to compel them. Judged by this rule the present case presents no difficulty. The commissioner of pensions did not refuse to act or decide. He did act and decide. He adopted an interpretation of the law adverse to the relator, and his decision was confirmed by the Secretary of the Interior, as evidenced by his signature of the certificate. Whether if the law were properly before us for consideration, we should be of the same opinion, or of a different opinion, is of no consequence in the decision of this case.''

Here is an officer with jurisdiction of the subject matter and power to render either of two specified decisions. He may have decided wrongly or rightly, or may or may not have given a wrong reason for a proper decision; but the result is not to be made the subject of *mandamus.* Section 603, L. O. L., says: "Any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for error therein, as in this chapter prescribed, and not otherwise." This language clearly indicates the writ of review to be the proper remedy for the grievances of which the relator complains, if they exist as a matter of law.

The demurrer should be sustained.

Mr. Chief Justice McBride concurs.