**KOPECKY et al. v. CITY OF YOAKUM.**

**No. 9435.**

Court of Civil Appeals of Texas. Galveston.

Jan. 12, 1931.

Rehearing Denied Jan. 29, 1931.

Durell Miller, of Yoakum, H. W. Wallace, of Cuero, and Walter F. Brown, of Houston, for appellants.

Green & Green, of Cuero, and Leslie C. Merrem, of San Antonio, for appellee.

LANE, J.

Shortly prior to March, 1928, the city of Yoakum, hereinafter referred to as the city, issued sewer extension bonds, the proceeds of the sale of which amounted to the sum of $70,000.

In March, 1928, Yoakum State Bank, hereinafter referred to as the bank, was acting as the official city depository for the city, and $29,266 of the proceeds of a sale of the sewer bonds was deposited in the bank in March, 1928. At a meeting of the board of city commissioners of the city, held in March, 1928, they passed a resolution by unanimous vote selecting the Yoakum State Bank as an additional depository of the city, and at such meeting they accepted the bond of the bank given to secure the $29,266 above mentioned, which had been placed in the bank. The bond mentioned was executed by the bank as principal, and by Philip Welhausen, O. R. Davis, M. C. Driscoll, B. H. Treybig, B. H. E. Hoppe, and C. L. Kopecky, as sureties, and delivered to the city, and reads as follows:

"The State of Texas—County of De Witt and Lavaca: City of Yoakum:

"Know all men by these presents:

"That Yoakum State Bank of Yoakum, Texas, a State Banking Institution, existing and doing business under the Banking Laws. of the State of Texas, as principal, and the undersigned as sureties, acknowledge it and themselves to owe and be indebted to E. S. Winfree, Chairman of the Board of Commissioners of the City of Yoakum, Texas, and his successors in office, in the sum of Sixty Thousand ($60,000.00) Dollars, for payment of which, well and truly to be made, said Bank binds itself, its successors and assigns, and said sureties bind themselves, their heirs, executors and administrators, jointly and severally, and by these presents:

"The condition of the above obligation is such, that whereas, at the meeting of the Board of City Commissioners of the City of Yoakum, Texas, held on the 17th day of March, A. D. 1928, the Yoakum State Bank of Yoakum, Texas, was selected as depository for a part of a special fund of the City of Yoakum, which fund is known as the Sewer Extension Fund, and being the money received by the City of Yoakum, Texas, as the proceeds of the sale of Seventy Thousand ($70,000.00) Dollars, City of Yoakum Sewer Extension Bonds.

"Now, therefore, if the Yoakum State Bank shall take good care of said part of said fund that may come into its hands as such

depository of said fund, and pay out the same under the joint order of the Chairman of the Board of Commissioners of the City of Yoakum and the city clerk, and shall account to said Board of City Commissioners for all said funds that may come into its possession with interest on average daily balances at the rate of three per cent (3%) per annum, then this obligation shall become null and void, otherwise to remain in full force and effect.

"In Witness Whereof, the Yoakum State Bank has caused these presents to be signed by its president and cashier under its seal, and said sureties for themselves, this 21st day of March, A. D. 1928."

Some time prior to the month of June, 1928, the city of Yoakum issued certain street improvement bonds, which were sold for $80,-000. On the 16th day of June, 1928, the city received the following letter from the bank:

"This is to authorize and request you to deposit with Yoakum National Bank Thirty-Two Thousand ($32,000.00) Dollars, and with Farmers and Merchants State Bank of Yoakum, the sum of Sixteen Thousand ($16,000.-00) Dollars, of the money received from the sale of Eighty Thousand ($80,000.00) Dollars of Street Improvement Bonds of 1928, issued and sold by the City of Yoakum, which money would ordinarily be deposited with this Bank as City depository. This Bank hereby relieves you of any liability or penalties which might accrue in its favor by virtue of it being City Depository of the City of Yoakum, and your having placed said funds with another institution. You are, however, notified that this Bank will not be liable for any funds not placed directly with it and you should therefore secure from these other Banks such bonds as you deem sufficient to protect you. The terms of this instrument shall remain in effect as long as this bank remains City Depository.

"In testimony whereof, The Yoakum State Bank has caused this instrument to be signed by its duly authorized President and Cashier, this 16th day of June, A. D. 1928."

After the receipt of the above-quoted letter, the city deposited in the bank $32,000 of the money belonging to the street improvement fund, and, to secure the payment of such funds, the bank, as principal, and Philip Welhausen, M. C. Driscoll, O. R. Davis, W. Shropshire, C. S. Kopecky, B. H. Treybig, E. Hagens, B. H. E. Hoppe, and J. D. Gray, as sureties, on the 16th day of June, 1928, executed and delivered to the city the following bond:

"The State of Texas, County of De Witt and Lavaca, City of Yoakum.

"Know all men by these presents:

"That Yoakum State Bank of Yoakum, Texas, a State Banking institution, existing and doing business under the Banking Laws of the State of Texas, principal, and the un-

dersigned as sureties, acknowledge it and themselves to owe and be indebted to E. S. Winfree, Chairman of the Board of Commissioners of the City of Yoakum, Texas, and his successors in office, in the sum of Sixty-Four Thousand ($64,000.00) Dollars, for payment of which, well and truly to be made, said Bank binds itself, its successors and assigns, and said sureties bind themselves, their heirs, executors and administrators, jointly and severally, and by these presents:

"The condition of the above obligation is such, that whereas at the meeting of the Board of City Commissioners of the City of Yoakum, Texas, held on the 16th day of June, A. D. 1928, the Yoakum State Bank of Yoakum, Texas, was selected as depository for part of a special fund of the City of Yoakum, which fund is known as the Street Improvement Fund and being the money received by the City of Yoakum, Texas, as the proceeds of the sale of Eighty Thousand ($80,000.00) Dollars, of City of Yoakum Street Improvement Bonds of 1928.

"Now, therefore, if the Yoakum State Bank shall take good care of said part of said fund that may come into its hands as such depository of said fund, and pay out the same under the joint order of the Chairman of the Board of Commissioners of the City of Yoakum, and the City Clerk, and shall account to said Board of City Commissioners for all said funds that may come into its possession with interest on average daily balances at the rate of three per cent (3%) per annum, then this obligation shall become null and void, otherwise to remain in full force and effect.

"In witness whereof, The Yoakum State Bank has caused these presents to be signed by its President and cashier, duly authorized by its Board of Directors and under its seal, and said sureties for themselves this 16th day of June, A. D. 1928."

Thereafter, on the 2d day of June, 1928, the board of city commissioners, through the clerk of the city, wrote a letter to each of the three banks in the city, including the Yoakum State Bank, notifying them that the board of city commissioners would receive bids for the custodianship of the city funds for the ensuing year ending June 30, 1929, and the Yoakum State Bank was the only bidder, and their bid was accepted unanimously by the board of city commissioners.

On 20th day of June, 1928, the bank, as principal, and Philip Welhausen, E. Hagens, B. H. E. Hoppe, O. R. Davis, M. C. Driscoll, Louis J. Poth, F. O. Crawford, B. H. Treybig, J. D. Gray, W. Shropshire, C. L. Kopecky, J. L. Bass, Eilert Kuck, and C. S. Riggs, as sureties, signed the bond set out below and delivered it to the city, and it was accepted by it in the shape shown:

"Bond.

"The State of Texas, County of De Witt & Lavaca.

"Whereas, the undersigned principal, a banking corporation duly incorporated and authorized by law to do a banking business in the City of Yoakum, County of DeWitt, State of Texas, and now carrying on such business in said city, and in the County of DeWitt, of said State, and having its legal domicile in the said city, county and State, has been designated as City Depository for said city *for the fiscal year ending June 30, 1929* (italics ours), by virtue of the laws of the State of Texas; and

"Whereas, to qualify and act as said City Depository, the said Act requires, among other things, that the undersigned principal shall give a bond, with sureties, in the amount at least double the total receipts of the City of Yoakum for the preceding fiscal year, said amount being for the sum of One Hundred and Fifty Thousand ($150,000.00) Dollars, and conditioned for the faithful performance of all duties and obligations devolving by law or ordinance upon said depository, and for the payment upon presentation of all checks drawn upon said depository by the City Clerk and Chairman of the Board of Commissioners of the City of Yoakum, whenever any funds shall be in said depository, and that all funds of the City of Yoakum shall be faithfully kept by said depository, and with the interest thereon accounted for according to law, and for breach of said bond the said city may maintain an action in its name.

"Now, therefore, know all men by these presents: That we, the said The Yoakum State Bank of Yoakum, Texas, as principal, and the undersigned B. H. Treybig, J. D. Gray, W. Shropshire, C. S. Kopecky, S. Hagens, B. H. E. Hoppe, O. R. Davis, M. C. Driscoll, & Phillip Welhausen, As sureties, all of the county of DeWitt and Lavaca, said State, are each held and firmly bound unto the city of Yoakum, in the sum of One Hundred and Fifty Thousand ($150,000.00) Dollars, the payment whereof well and truly to be made to the City of Yoakum, in the city of Yoakum, said counties and State, we, and each of us, jointly and severally bind ourselves, our heirs, executors and administrators, firmly by these presents. The conditions of the above obligation are such that if the above named principal, the said The Yoakum State Bank of Yoakum, Texas, which has been designated as City Depository for the city of Yoakum as aforesaid, shall faithfully perform all the duties and obligations devolving by law or ordinance upon said depository, and shall pay upon presentation all checks drawn upon said depository by the City Clerk and Chairman of the Board of Commissioners of the City of Yoakum, whenever any funds shall be in said depository, and that all funds of the city of Yoakum shall be faithfully kept by said depository, and with the interest thereon accounted for according to law; and that for breach of said bond the said city of Yoakum may maintain an action in its name; and that said depository shall in every respect comply with all the requirements of all laws of Texas, and ordinances of the city of Yoakum, and shall perform each and all of the conditions contained in and discharge all the duties imposed by said act or ordinance, then this obligation to become void, otherwise to remain in full force and effect. It is understood that the interest referred to above shall be Three (3%) per cent on average daily balances.

"Any suit on this bond shall be in the name of the city of Yoakum, and shall not be void on the first recovery, but may be sued on until the full sum named herein shall have been recovered.

"In witness whereof, the above named principal, acting herein by its president and under its corporate seal, does hereunto subscribe its name and the said sureties do also hereunto subscribe their names, this the 20th day of June, A. D. 1928."

On June 30, 1928, the city had on deposit in the bank, belonging to the general funds of the city, $62,000, and the same sum on July 1, 1928, and the city on said dates had on deposit in the bank $27,994.98 of the special sewer fund account and $31,841.50 of the special street improvement account.

During the months of July and August, 1928, and up to September 5, 1929, the city deposited in the bank $12,499.84; and during the same period it withdrew from the bank $41,755.58.

On the 5th day of September, 1928, the bank was closed by the banking commissioner, at which time the bank owed the city a balance, of the deposits made with it, of $93,119.52, and from such time the bank refused to pay checks drawn by the city against such deposits.

After the bank was closed, the banking commissioner paid the city, as a dividend, the sum of $9,311.95, leaving a balance due the city by the bank on September 5, 1928, of $83,807.57.

The bonds mentioned above will hereinafter be referred to as the sewer bond, the street bond, and general depository bond, respectively.

All those who signed the sewer bond also signed the street bond, and W. Shropshire, E. Hagens, and J. D. Gray, who did not sign the sewer bond, signed the street bond. All those who signed the sewer bond and the street bond also signed the general depository bond, and Louis J. Poth, F. O. Crawford, J. L. Bass, Eilert Kuck, and C. S.

Riggs, who signed neither the sewer bond nor the street bond, signed the general depository bond.

The bank having refused, after it was closed on the 5th of September, 1928, to pay checks drawn on it by the city, and after the sum of $93,119.52 owing by the bank to the city had been reduced by the dividend paid by the banking commissioner to the sum of $83,807.57, the city brought this suit to recover upon each and all of the bonds against all the signatories to the general depository bond, and the other bonds, together with interest thereon, jointly and severally.

The bank and the banking commissioner, James Shaw, answered by general demurrer and general denial. All the sureties on the general depository bond, who have appealed, urged various exceptions, general and special, to the plaintiff's petition, and alleged substantially that plaintiff was not entitled to any recovery upon the sewer bond, or street bond: (1) Because they were not made payable to the city, as required by law, but were made payable to E. S. Winfree, chairman of the board of commissioners of the city and his successors in office, for the benefit of the city; (2) because they terminated by operation of law long before the bank was closed; (3) because no money was deposited in the bank to the credit of either the sewer account nor street account after these bonds were accepted and approved by the city; (4) because after the approval of the street bond the city made a new selection of a city depository, which became effective on July 1, 1928, and that a new bond covered all funds, which the city accepted and approved on June 27, 1928; and said sureties further alleged that the plaintiff was not entitled to a recovery upon the general depository bond of date June 27, 1928, for any part of the $122,375.26 which was deposited in the bank prior to the execution of such bond, but could be held only for deposits made after such bond took effect, and they alleged that all such deposits were withdrawn by the city.

They also alleged that said $122,375.26, above mentioned was as a matter of fact, not in the bank at the time the general depository bond was given, and that at such time the bank was wholly insolvent, and hence the city could not have withdrawn any part of the same, and that the city knew of those facts before the designation of the bank as a depository took effect, and that the reappointment of the bank as a depository was part of a fraudulent scheme to saddle a loss on innocent bondsmen; that the selection of the bank as a depository in June to take effect July 1, 1928, was illegal and the bond given under such selection is void, and that the designation of the bank as a depository is also void, because

no notice was given calling for bids for the right to be designated as depository, as required by law, and that, since the designation is void, the bond given by virtue thereof is void; that the city entered into a secret agreement with the bank that the bank should not receive all the revenue of the city during the year beginning June 30, 1928, and that a portion thereof might be deposited in other banks in the city, and therefore no recovery should be allowed upon the general depository bond.

They also alleged that the bond was materially altered after those whose names appeared in the body thereof had signed it, by the signing of the same by others without the knowledge or assent of those whose names appear in the body of the bond, and that, by reason of such alteration, the bond was void as an obligation of defendants.

By supplemental petition the plaintiff city demurred generally to the allegations of defendants' answer, alleging that such allegations state no defense to the plaintiff's suit. The city also specially excepted to each and every paragraph of defendants' answer, and averred that the matters as alleged are insufficient to advise the plaintiff of the specific matters relied upon by defendants as a defense to plaintiff's suit so that plaintiff might make answer thereto. Plaintiff also denied generally the allegations of the defendants, and specially alleged that when the defendants signed, executed, and delivered the general depository bond, it was recited that the bank was a banking corporation, authorized to do a banking business, and was so engaged in the city of Yoakum, Tex.; that said bank had been designated as city depository for said city for the fiscal year ending June 30, 1929; that such recitals constitute representations made to plaintiff upon which it relied, and, acting thereon, accepted said bond; and that, by reason of the matters stated, defendants are estopped to deny the truth of such statements and representations, and estopped to deny that they signed the bond as sureties.

The court sustained all of the plaintiff's special exceptions to the answer of defendants, and defendants refused to amend.

When the case was called for trial, plaintiff dismissed as to B. H. E. Hoppe, M. C. Driscoll, and Philip Welhausen, for the reason that they had been adjudged bankrupts by a federal court.

The case was tried before a jury. At the close of the evidence, all parties asked the court for an instructed verdict in their respective favors; whereupon the court denied the motion of defendants and instructed the jury to return a verdict for the plaintiff for the sum of $83,807.57, the sum sued for. Such verdict was accordingly returned, and upon such verdict the court render-

ed judgment against all of the defendants, except those who had been dismissed from the suit by plaintiff, in favor of the plaintiff for the sum of $83,807.56 with 6 per cent. interest per annum from date of judgment. From such judgment defendants C. L. Kopecky, Eilert Kuck, E. Hagens, C. S. Riggs, O. R. Davis, Louis J. Poth, J. D. Gray, and W. Shropshire only have appealed.

■ The substance of appellants' propositions Nos. 1 to 4, inclusive, may be stated as follows:

If the bank was insolvent when designated by the city as depository in June, 1928, and unable to pay upon checks drawn by the city upon it, deposits made prior to the execution of the general depository bond, if the city knew of such insolvency at the time the bond was executed and accepted, the sureties on such bond were not responsible for the repayment of such pre-existing deposit, for the reason that such deposit did not, in law or equity, represent a sum in the bank at the time of the execution and acceptance of the bond, nor did it represent a fund in the bank at any time while such bond was in force, but it was merely a debt for money previously deposited which the bank had lost and was unable to repay to the city.

We cannot sustain appellant's propositions. Evidently, we think, the purpose and intent of the Legislature in requiring the execution of a bond by a depository of funds of a city was to guarantee the repayment of the funds deposited, and not such deposits only as was in actual money remaining in such depository at the time of the execution of the bond, for it is unquestionably the purpose of the depository in procuring the deposit of such funds, upon which it agrees to pay interest, to make loans of such funds. The contention of appellants that, if as a fact the depository had no funds out of which such deposits could be paid at the time the bond was executed, which could be drawn out on checks of the city, the bondsmen would not be liable for the repayment of such funds, does not appeal to us as a sound proposition. We hold to the contrary. Henry County v. Salmon, 201 Mo. 136, 100 S. W. 20; Sullivan v. City of Galveston (Tex. Civ. App.) 17 S.W.(2d) 478; Mathis v. Morgan, 72 Ga. 517, 53 Am. Rep. 847.

At the time the bond in this case was executed and accepted, the bank was a going institution and remained so until September 5, 1928, some months after the bond was executed and accepted by the city.

If it be conceded that the bank was in a bad financial condition, verging on insolvency, and that the city knew of such condition, there was neither pleading nor evidence to show that the sureties on the general depository bond, several of whom were officers of the bank, did not know of such condition. Under the circumstances shown, the city had the right, we think, to assume that the sureties understood the obligation they were assuming and that they signed the bond for the purpose of aiding the bank in getting the city to continue to deposit its funds in the bank. It is shown that, after such bond was given, the city continued to make deposits in the bank, and it is not shown that thereafter, until the bank was closed, the city deposited any of its funds elsewhere than in the Yoakum State Bank, the principal in the bond.

■ By their propositions Nos. 5, 6, and 7 appellants contend that the court erred in not permitting the witness Guyn, called by them, to testify to facts tending to show that the bank was insolvent at the time of the execution of the general depository bond; that it had as part of its assets worthless paper and other notes receivable amounting to $700,000 or $800,000 which exceeded the capital and surplus of the bank by about $600,000, and that the funds standing to credit of the city on the books of the bank could not have been paid by the bank at any time from July 1, 1928, to September 5, 1928, the time the same was closed; that, from the time the first depository bond was given in March, 1928, and up to the time the bank was closed in September, 1928, practically no loans were made by it, and that it sustained no losses on transactions accruing after the first bond was given; that in June, 1928, he heard the affairs of the bank discussed in the presence of E. S. Winfree, chairman of the board of commissioners of the city; that at that time the failing condition of the bank was discussed —for the reason, first, that such testimony was material and admissible to show that the credit balance in favor of the city on the books of the bank at the time any of the bonds sued on were given did not represent funds which the city actually had in the bank, but merely represented a worthless claim, the real funds having long since been dissipated; second, that such testimony was also admissible as tending to show that nothing was done by the bank to impair the funds of the city after the bonds were executed, and as tending to show that there was no breach of the conditions of any of the bonds as alleged by the city.

What we have said in disposing of the contentions made by propositions 1 to 4, inclusive, we think, dispose of the contentions made by propositions 5 to 7, inclusive. Whether the bank was in a failing condition when the bonds were executed and accepted is an immaterial inquiry; the sureties who came to the aid of the bank at its request are presumed to have fully understood the obligation they were assuming.

So far as the evidence shows, the city fully complied with the obligations assumed by it by reason of its acceptance of the general depository bond of date June 27, 1928, which became effective July 1, 1928. It continued to make deposits in the bank, and made no deposits of any of its funds elsewhere after the bond was accepted. The court did not err in refusing the admission of the tendered testimony.

By their propositions 8 to 12, appellants contend substantially that the selection and designation of the bank as city depository for the year ending July 1, 1929, is void:

First, because such designation was made in June, 1928, in violation of article 2559, Revised Civil Statutes of 1925, which provides, among other things, that "the governing body of every city in this State incorporated under the general laws therof, or incorporated under special charter, at its regular meeting in July of each year, is authorized to receive sealed proposals for the custody of the city funds, from any banking corporation, association or individual banker, doing business within the city, that may desire to be selected as the depository of the funds of the city. * * * Notice that such bids will be received shall be published by the city secretary not less than one nor more than four weeks before such meeting, in some newspaper published in the city."

Second, because the notice required by article 2559 was not published.

Third, since the designation of the bank as city depository for the year ending July 1, 1929, is void, the general depository bond of date June 27, 1928, is also void.

It is the duty of a court of justice to try to get at the real intention of the Legislature in passing an act, and to give such act such construction as will promote such intention. Article 2559 provides no penalty and imposes no forfeiture in case of noncompliance with its literal provisions. There is no declaration in the act that, if the designation of a depository is made at a time other than at a regular meeting in July of each year, as stated in the act, such designation should be void for failure to comply with the provisions of the act. We think that the provision of the statute declaring that the time for making such designation should be at a regular meeting of the governing body of a city in July of each year is directory only and not mandatory. In volume 2, § 621, Lewis, Sutherland's Statutory Construction, it is said that, when a formality is not absolutely necessary for the observance of justice, but is introduced to facilitate its observance, its omission, unless there is an annulling clause in the law, will not annul the act.

In section 622 of the same volume it is said: "The requirement that the inspectors of a corporate election be sworn, in the absence of a nullifying clause on account of the omission, was held directory; that the election was not invalidated by the failure of the officers to be sworn. A statutory provision that the clerk of the district give notice of the annual meetings was merely directory, and that the proceedings after the meeting were valid although no notice was given. A board of canvassers cannot reject a pollbook on account of its being transmitted to the clerk through one not an elective officer. Statutes concerning the manner of conducting elections are directory unless the non-compliance is expressly declared to be fatal to the validity of the election or will change or make doubtful the result. Provisions requiring ballots to be initialed by the judges of election, to be marked in ink, and to contain the name of the party or principle which the candidate represents, were held directory."

In Lewis, Sutherland's Statutory Construction, vol. 2, p. 1115, it is said: "Where a statute is affirmative it does not necessarily imply that the mode of time mentioned in it is exclusive, and that the act provided for, if done at a different time or in a different manner, will not have effect. Such is the literal implication, it is true; but since the letter may be modified to give effect to the intention, that implication is often prevented by another implication, namely, that the Legislature intends what is reasonable, and especially that the act shall have effect; that its purpose shall not be thwarted by any trivial omission, or a departure from it in some formal, incidental or comparatively unimportant particular."

The rule stated is upheld by the following decisions: Russell v. Farquhar, 55 Tex. 356; City of Uvalde v. Burney (Tex. Civ. App.) 145 S. W. 311; Gomez v. Timon, 60 Tex. Civ. App. 311, 128 S. W. 656; Ferris Press Brick Co. v. Hawkins, 53 Tex. Civ. App. 578, 116 S. W. 80; Reynolds v. Dechaums, 24 Tex. 174, 76 Am. Dec. 101; Farmers' State Bank v. Brazoria County (Tex. Civ. App.) 275 S. W. 1103; Stone v. Hill, 72 Tex. 540, 10 S. W. 665; McInery v. Galveston, 58 Tex. 334.

It would seem from the rule above stated, when applied to the present case, the fact that the notice of the intention to make the designation of the depository for the year beginning on the 1st day of July, 1928, and ending on the 1st day of July, 1929, was made by addressing a letter, giving such notice to each of the banks in the city, and not made in manner or mode designated in the statute, would not destroy the validity of such designation for want of notice, nor would it render such depository designation announced on June 27, 1928, to take effect July 1, 1928, void.

In commenting on the time and mode of designating a depository, it is said in 18 Corpus Juris, p. 584, § 52: "The statutory specification of a particular date is directory merely"—citing State v. Siemens, 68 Or. 1, 133 P. 1173.

By their fifteenth proposition appellants insist that the general depository bond by its terms purports to be a statutory bond to secure the performance of the statutory duties of the depository, and the statutory provisions should be read into it and provisions inconsistent with the statute should be read out of it, and as a statutory bond executed in June, 1928, terminates and expires by virtue of the statute in the following July, and as the bank was not closed or it had not failed to pay checks drawn upon it by the city until September 5, 1928, a recovery against appellants on the bond was not warranted.

■ It is clearly apparent from what we have said that we think the bond was a statutory bond, but, if it be conceded that the bond was not executed strictly under the provisions of the statute and for such reason cannot be considered a statutory one, the sureties would nevertheless be liable on it as a common-law obligation. The statute does not provide that a bond differing from the one therein prescribed shall be void. It is clear, we think, that this bond was voluntarily given to obtain for the principal a privilege to which it was not entitled as a matter of legal right, and the circumstances under which it was given and acted upon are such as to make it a perfect common-law bond. Watkins v. Minter, 107 Tex. 428, 180 S. W. 227.

By appellants' propositions Nos. 13 and 14, it is insisted that appellants are not liable for the payment of the $122,375.26 which was deposited in the bank before the bank became a depository, even if the bond be treated as a common-law obligation.

We have already, by a discussion of the contentions made under propositions 1 to 4, inclusive, and 8 to 12, inclusive, disposed of the contention made by propositions 13 and 14, and deem it unnecessary to further discuss such contentions.

■ By appellants' propositions 16 to 25, inclusive, they insist that no recovery could be had on the sewer bond and the street bond, dated respectively March 21, 1928, and June 22, 1928, first, because they terminated and expired as a matter of law when the general depository bond, which covered all funds of the city, became effective; second, because they were not made payable to the city, as required by law.

The contentions thus made, if supported, would not lessen the liability of any one of the appellants, as each of them was a party to the general depository bond of date June 27, 1928, which covered all the funds of the city, including those formerly covered by the two bonds, the sewer and street bonds, and therefore appellants are not entitled to a reversal of the judgment though it be held that no recovery was justified upon the two bonds.

■ By their twenty-sixth, thirty-fourth, and thirty-fifth propositions, appellants, joined by J. L. Bass and F. O. Crawford, who did not appeal, insist (1) that the general depository bond does not by its operative words and terms create any obligation against Bass, Kuck, Riggs, Poth, and Crawford, who signed the bond, but whose names did not appear in the body of the same as parties assuming the obligation stated therein; (2) that said bond was not the contract of Bass, Kuck, Riggs, Crawford, and Poth, and it was not binding on them or any of them, but it only bound the bank and the sureties whose names appear in the body of the instrument; (3) as the bond was signed by appellants Gray, Kopecky, Hagens, and Davis, named in the body of the bond, and was thereafter signed by Bass, Kuck, Riggs, Poth, and Crawford without the knowledge or consent of the parties first named, but was signed by them upon the demand of the city that the principal, the bank, procure the signatures of additional sureties, the city was not entitled to any recovery on the bond against any of the sureties. They contend that the bond was not enforceable as against appellants, Gray, Kopecky, Hagens, and Davis, whose names appeared in the body thereof, in that, after they had signed the same, it was materially altered by reason of the fact that the signatures of Bass, Kuck, and others were signed thereto without the consent of the first-named parties.

We think none of these contentions can be sustained. We think it clearly apparent from the terms of the bond that the purpose of its execution was to secure the repayment of all funds of the city which were or might be placed in the depository bank during the life of the bond, as well as from the circumstances surrounding its execution, and that Bass, Kuck, Riggs, and others whose names did not appear in the body thereof fully understood that they were to be sureties to accomplish the purpose for which the bond was given.

In volume 6, R. C. L. p. 835, § 225, it is said: "Generally speaking, the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. It has been said that to this paramount rule all others are subordinate. The parties should be bound for what they intended to be bound for, and no more. The courts will hold them bound to that extent, if their intention can be arrived at."

500

And in section 226, same volume: "There can be no doubt that the court may look beyond the form into which the parties have cast their contract. Neither the form of a contract nor the name given it by the parties controls its interpretation. In determining the real character of a contract courts will always look to its purpose, rather than to the name given it by the parties."

Unquestionably Bass and others whose names did not appear in the body of the bond, but who signed the same, intended to sign as sureties and together with the other signers to assume the obligations stated in the bond, and it is equally certain that the city approved and accepted the bond after Bass and others had signed it with the understanding that all those who signed it had, by their signatures, obligated themselves to see that the terms of the bond were performed. Neither Bass, Kuck, Riggs, Poth, or Crawford filed a plea of non est factum, though the plaintiff sued upon the bond alleging that each of them had executed the same, together with the other signers, with the purpose and intention of becoming liable as sureties on the bond. To bind Bass and others whose names appeared only as signers of the bond it was not necessary that they should be named in the same as sureties. Cooke v. Crawford, 1 Tex. 10, 46 Am. Dec. 93; San Roman v. Watson, 54 Tex. 258; Pequawkett Bridge v. Mathes, 7 N. H. 230, 26 Am. Dec. 737; Building Ass'n v. Cummings, 45 Ohio St. 664, 16 N. E. 841.

The cases cited by appellants to sustain their contention are all cases wherein conveyance of land was involved and are not applicable to such an instrument as is involved in the present suit.

The rule as to whether one who signs a conveyance of real property is bound by it, although he does not appear upon its face to be a party to it, we think well stated in Agricultural Bank v. Rice, 4 How. 225, 241, 11 L. Ed. 949, by Chief Justice Taney, as follows: "In order to convey by grant, the party possessing the right must be the grantor, and use apt and proper words to convey to the grantee, and merely signing and sealing and acknowledging an instrument, in which another person is grantor, is not sufficient." But such rule is not applicable to such instrument as is here involved.

The contention that the bond was materially altered by the signatures of Bass, Kuck, Riggs, and others, after it had been signed by Gray, Kopecky, Hagens, and Davis, so as to render it void or voidable, is untenable. It can hardly be seriously contended that the signing of the bond by Bass, Kuck, and others in any way injured the rights of Gray, Kopecky, Hagens, and Davis. It would rather seem that the fact that Bass and others joined in the bond as sureties would share the risks assumed theretofore by the first signers, and would not be a material alteration to their damage.

By their twenty-seventh proposition appellants contend that the court erred in rendering judgment against them for any part of the deposits made before the general depository bond was given; by their twenty-eighth, that the court erred in rendering judgment against them, because at the time the bond was given there existed a secret agreement between the city and the bank that a part of the funds of the city would be placed in other banks in Yoakum, in violation of law; that, by reason of such agreement, the bond was rendered void; by their twenty-ninth, that the court erred in refusing to admit evidence tending to show that the bank was insolvent at the time the bond was given; by their thirtieth and thirty-third, that the court erred in not admitting evidence tending to show that the city knew that the bank was insolvent at the time the bond was given; by their thirty-first, that the court erred in not admitting evidence tending to show that the city had no valid statutory bond at the time it advertised for bids on June 2, 1928.

We have heretofore, in discussing other assignments, substantially held that none of the matters complained of by these propositions constitute error, and therefore we overrule all such complaints without further discussion.

By their thirty-second proposition appellants contend substantially that the court erred in not permitting them to introduce evidence showing that the bond for $150,000 was not double the total receipts of the city for the preceding fiscal year, as stated in the bond, in that such evidence was material as tending to show that the city actively participated in a fraud in inducing the sureties on the general depository bond to execute same.

We overrule such contention as being without merit. The evidence, if admitted, would not tend to show fraud on the part of the city. There is nothing in the bond more burdensome than permitted by our statute, nor anything to mislead the sureties as to the obligation they voluntarily assumed.

By their thirty-sixth proposition appellants substantially contend that the court erred in sustaining the plaintiff's special demurrer to the fourth paragraph of their answer, whereby it was alleged that the bank and the city board knew that the bank was insolvent and wholly unable to pay to the city the special sewer and street funds of the city which had been deposited in the bank, upon an agreement entered into between the city, the bank, and two other banks, that, no matter which one of the banks of the city of Yoakum should be chosen as a depository for the fiscal year ending

June 30, 1929, certain portions of such special funds should be deposited in each of said banks; that appellants knew nothing of such agreement; that by such agreement a fraud was practiced upon appellants which rendered void the general depository bond.

We do not think the court erred in sustaining the special exception complained of. We are at a loss to see how the agreement mentioned could have constituted a fraud as to appellants. It seems to us that, had all the special funds been deposited in the bank, the risk assumed by appellants would have been enlarged rather than diminished. A complete answer to appellants' contention that they should be relieved of liability on the bond because under the agreement alleged a part of the city funds was deposited in banks other than the chosen depository, is that, while the statute (article 2561) provides that it shall be the duty of the city treasurer to deposit all funds of the city with the chosen depository, his failure to so deposit such funds would not invalidate the bond given by the chosen depository to secure the repayment of such funds as were deposited in such depository. By the provisions of the statute mentioned, the penalty for a deposit of any part of the funds of the city elsewhere than in the chosen depository, unless agreed to by such depository, is 10 per cent. per month upon the amount so deposited to be recovered by the depository. It would seem from such provision that it was not contemplated that in such case as the present a deposit of a portion of the funds in banks other than the chosen depository, either with or without the consent of such depository, would work a forfeiture of the bond of such depository so as to release the sureties thereon upon the theory that the city had practiced a fraud upon such sureties. The allegation that the agreement mentioned constituted a fraud as against the sureties presents no defense to the plaintiff's suit.

The court, upon special exceptions addressed thereto, struck out paragraphs 7 and 8 of defendants' answer. By paragraph 7 it was substantially alleged that no notice was given calling for bids for a depository in manner as required by law, and that no bond was executed by the bank in connection with the designation of a depository made in June, 1928, until after the expiration of the five-day period mentioned in article 2560, Revised Statutes of 1925.

By their propositions 37 and 38 appellants insist that such allegations set up valid defenses to the plaintiff's suit on the bond, and that the court erred in sustaining the special demurrer addressed to such paragraph, and by proposition 39 appellants complain of the action of the court in striking out paragraph 8 of their answer, whereby they alleged that the bond signed by them as sureties did not secure the repayment of the funds deposited

in the bank prior to the execution of the same; that, if the bond was valid for any purpose, it was only so to secure repayment of such funds as were deposited after the bond was executed, all of which were fully paid before this suit was instituted.

The court committed no error in sustaining such special exceptions. We have already, in a discussion of contentions made by other propositions, held that such allegations as are set up in paragraphs 7 and 8 of the answer present no defense to the plaintiff's suit, and it is needless to repeat the same here.

■ We will not take the time or space to answer appellants' propositions 40, 41, 42, and 43, wherein it is substantially insisted that the plaintiff was not entitled to a recovery against Bass and Crawford, in that O. R. Davis and B. H. E. Hoppe, acting as agents of the city and the bank jointly to procure additional signatures to the bond, for the purpose of procuring the signatures of Bass and Crawford represented to said parties that one Will F. Miller would be one of the signers on the bond as a surety and that the bond would not be delivered and approved until Miller signed same as a party, surety, and that, relying upon such representations, Bass and Crawford signed the bond as sureties.

Such contention, if true, would be applicable to defendants Bass and Crawford only, and to none of the appellants. Neither Bass nor Crawford are parties to the appeal. Neither of them signed the appeal bond, nor does the name of either of them appear in the appeal bond as appellants, and therefore neither of them is in a position to claim relief at the hands of this court, and the appellants cannot do so for them.

Appellants by their fourty-fourth and forty-fifth propositions contend that the court erred in striking out the fourteenth and fifteenth paragraphs of their answer in response to special exceptions addressed thereto. By paragraph 14 it is alleged, in substance, that appellants were induced to sign the general depository bond by reason of material misrepresentations of fact made to them by the city which the city knew were untrue and which defendants did not know were untrue, and therefore they relied upon such representations and signed the bond as sureties, which they would not have done had they known such representations were false, and by paragraph 15 they allege that the city and the bank had entered into an agreement that only 40 per cent. of the sewer and street funds should be placed in the depository bank, and the remainder thereof in the other two banks in the city; that such arrangement was not provided by law; that appellants were, by those procuring their signatures, who were acting jointly for the city and the bank, told that the bank was to be a

statutory depository with all rights incident thereto; that, by reason of such agreement, the designation of the bank was not a statutory designation, carrying with it all the rights of a statutory depository; that appellants, believing such representations to be true, signed the bond as sureties.

The only specific act alleged in paragraphs 14 or 15 of appellants' answer, which they contend alleged that they were induced by false representations to sign the bond, was that there was a secret agreement between the city and the bank that a large part of the funds of the city should be kept in banks other than the depository bank.

As we have hereinbefore intimated, if not directly held, there is nothing in the answer of appellants which alleges any specific fact or facts which would constitute a fraud. We have also said that, if any part of the sewer and street funds were, under an agreement made before the execution of the bond, deposited in banks other than the depository bank, the sureties could not be and in fact were not misled to their damage as signers of the bond. There is no contention on the part of appellants that any funds of the city were placed elsewhere than in the selected depository after the execution of the general depository bond. It clearly appears that the only funds deposited in other banks by the city were parts of the sewer and street funds, all of which were deposited before the general depository bond was executed and approved. We do not think the allegations made in said paragraphs 14 and 15, nor in any other part of appellants' answer, set forth any fact constituting a fraud upon the sureties nor any defense to the plaintiff's suit.

In Corpus Juris, p. 589, it is said: "The sureties are estopped from denying * * * the truth of recitals in the (depository) bond which they executed. Ordinarily an obligor on the bond cannot show that he thought that he was signing some other paper. A surety who is induced to become such by selection * * * of a bank as a solvent depository is liable, although the representation as to the solvency is false. The government is not responsible for a fraud to which it is not a party, committed by the depository to induce a person to become a surety"—citing Mathis v. Morgan, 72 Ga. 517, 53 Am. Rep. 847; Fidelity & Deposit Co. of Maryland v. Wilkinson County, 109 Miss. 879, 69 So. 865.

In Mathis v. Morgan, the Supreme Court of Georgia said: "The principles of common sense, * * * self-preservation, the first law of nature, as well as the well settled principles of law and equity in the books, put him [the surety] on inquiry, and affected him with notice of the bank's condition."

Two days after the trial had begun and after the plaintiff had announced that it rested, defendants asked the privilege of filing a trial amendment. Such request was by the court refused. Appellants present such refusal as reversible error.

We have carefully examined the record with reference to the ruling complained of, and conclude that the court did not abuse his discretion in making such ruling.

For the many reasons stated, the judgment is affirmed.

Affirmed.