C. J. AND EMMA GARRISON ET AL. v. T. S. AND JANE BLANTON ET AL.

1. WILL.—To set aside a will for want of mental capacity to make it, the incapacity of the testator to give intelligent consent to an act that will bind him in the disposition of his property, must be shown. It is not necessary, to avoid the will, that the testator's mind should have been under the influence of insanity—as the term is described by law writers—in any of its grades. It is sufficient to avoid the will, if there is a want of will on the part of the testator accompanying the act, or a want of capacity to understand what he is doing with his property in making the will. To make a valid will, the strength of the testator's mind must be equal to the purpose to which it is applied.

2. WITNESS—EVIDENCE.—It is competent for a witness to give his opinion as to one's mental capacity to make a will, based upon the appearance of the party, and to detail concurring facts which entered into the formation of that opinion; and it is not mate-

rial whether the witness details the describable facts on which his opinion is based, before or after he has given his opinion.

3. WITNESS — EVIDENCE.— There is no rule of evidence which will prevent a witness to a will from being examined as a witness to prove the want of mental capacity of the testator at the time of signing his will.

4. EVIDENCE.— Evidence elicited by a leading question, improperly asked a witness, can furnish no ground for reversal, when it pertains to a special issue found in favor of appellant.

APPEAL from Rusk. Tried below before the Hon. A. J. Booty.

Many witnesses were examined in this case, but it is believed that sufficient reference is made to their evidence in the opinion, which gives all the facts material to a proper understanding of the case, except only the charge of the judge regarding the mental capacity necessary to a valid will.

That portion of the charge referred to in the opinion is as follows: "You will look to all the evidence before you; and if you believe from the evidence that the said Letitia N. McClarty had, at the time of making said will, sufficient mental capacity to know, and that she did know, what she was doing, and that she was giving her property to the said Hugh G. McClarty, then you will find that she had sufficient capacity to make a will; otherwise you will not.'

*Drury Field,* for appellants.

*N. G. Bagley,* also for appellants.

*R. M. Wynne,* also for appellants.

*James H. Jones,* for appellee, cited Parker *v.* Parker, 10 Tex., 86; Renn *v.* Samos, 33 Tex., 764; 2 Redfield on Wills, 95–6; 1 Greenl., sec. 440; Thomas *v.* The State, 40 Tex., 60; 1 Curtis, 637; Jarman on Wills, 42; Vickery *v.* Hobbs, 21 Tex., 574.

*W. W. Morris,* also for appellee.

ROBERTS, CHIEF JUSTICE.—This is a proceeding instituted in the District Court to set aside the will of Letitia N. Mc-Clarty, on two grounds: 1st. For want of mental capacity to make a will. 2d. Because said will was made under an undue influence, exercised upon her by her son, to whom the will gives the whole of the property mentioned in it.

The verdict of the jury affirms the first ground, and negatives the second.

By the judgment of the court, the will is set aside, and the real estate left by said Letitia N. McClarty, with its reasonable rents accruing since the commencement of the suit, were decreed to be divided between the descendants of her heirs *per stirpes.*

The incapacity alleged, and which the evidence tended to prove, was a stupor produced by extreme illness, and morphine administered as a medicine.

The witnesses described her as being unconscious, except when aroused; that she could not stay awake long enough to understand the will which was read to her; and when aroused, she looked like a person asleep with her eyes open. This would seem to be about the impression produced upon the minds of the witnesses generally by her appearance merely. To that extent, it was a judgment as to her condition and state of mind, resulting from the perception of the witnesses. It may be very difficult, if practicable at all, to give the reasons for this judgment, just as it would be difficult to tell how the person of a friend is recognized, or to tell why a person's appearance indicates distress, mortification, or joy, unaccompanied by any acts of demonstration. Still, people are found to be in the daily habit of acting upon such judgment, so formed, in important matters. This is a ground for an opinion, or conclusion, or judgment, or whatever else it may be called. (1 Redfield on Wills, 137–8.)

In addition to the mere appearance, the witnesses detail other facts which were acts of demonstration, and circumstances conducing to the same conclusion that were of a char-

acter capable of a description,—such as that she had been very sick for several days before; was then very low and feeble; that she had been in that stupor during that day before the signing of the will; that two hours previous to that time morphine had been administered to her; that she never recovered from the stupor; that she had to be raised up in the bed, and have her hand held and guided, to write her name; that the letters of her name were dictated to her consecutively, to enable her to sign the paper; that she asked that the will should not be read aloud; that when reminded that she had not willed her granddaughter something, she asked to be well nursed until morning, when she would have it set right; and the like.

Such an impression, made upon the minds of a number of attending witnesses, and upon all that were present who testified, so corroborated by the facts of demonstration concurring, may well establish a state of mind lacking the capacity to give a consent to an act that would bind her or her heirs in the disposition of her property. It is not requisite that it should fall under the head of insanity, in any of its kinds or grades, as it is described, and attempted to be classified, in law-books. It is sufficient, if there is a want of will of her own accompanying the act, or a want of capacity to understand what she was doing with her property in making the will. To make a valid will, "the strength of mind must be equal to the purpose to which it is applied." (1 Redfield on Wills, 102.) This, it is said, may safely be tested "by requiring the party to repeat from memory the mode in which he has disposed of the bulk of his property." (Id., 95.) But the law prescribes no particular mode of testing the fact of a disposing capacity, or the want of it. We cannot say, in this case, that there was a want of sufficient evidence to sustain the verdict of the jury as to her want of capacity. The witnesses gave their opinions, that she had not the mental capacity to make a will. It was their conclusion, from her appearance, and from the concurring facts detailed by them, that

entered into the formation of their opinion, as it is styled. It is not thought material whether the witnesses detailed the describable facts upon which their conclusion was founded, before or after the expression of their opinions. Had they detailed them before, it would hardly have fallen within the province of the judge to have excluded their opinions, because he did not either understand the force of the facts detailed to establish their conclusion, or did not fully agree with them in their conclusions from the facts detailed by them.

It has been held, by this court, in cases of insanity, that "witnesses should be allowed to give their opinions, together with the facts on which their opinions are based." (40 Tex., 64–5; Renn *v*. Samos, 33 Tex., 766.) That is in accordance with the general rule of evidence, as applicable to witnesses of a transaction who are not experts. (1 Redfield on Wills, 140, 142.)

Incapacity to contract from drunkenness, may be proved in the same way. (Reynolds *v*. Dechaums, 24 Tex., 174.) Some of the witnesses who gave this evidence were persons who witnessed the will. Though it may be very improper for any person to witness a will who believes the testator is at the time incapable of making a will, still there is no rule of law debarring them from giving their evidence, whatever it may be, whether for or against the validity of the will, because they are witnesses to the will. (1 Redfield on Wills, 95–6, and note.)

The exceptions taken to the interrogatories propounded to the witnesses, because they were leading, are not sustainable. They are not more leading than was permissible to enable the witnesses to understand the degree of incapacity of which they were desired to speak and give their opinions.

The answer of Mrs. Johnson to the concluding general question, brought out facts tending to show undue influence, and that only; and, though objectionable, it worked no injury, as shown by the verdict of the jury negativing the exist-

ence of undue influences. The charge of the court upon the main issue in the case was correct; and properly left out of consideration much that was set up in the pleadings about which there was no evidence requiring a charge.

There are questions upon the limitation of the action, and about homestead rights, sought to be raised in the assignment of errors, which were not presented on the trial, and do not require any revision by this court.

Judgment affirmed.

                                                AFFIRMED.