**SMALL et al. v. TAYLOR et al.**

No. 7722.

Court of Civil Appeals of Texas. Austin.
Oct. 5, 1932.

Rehearing Denied Oct. 19, 1932.

Baker & Baker and Critz & Woodward, all of Coleman, for appellants Mrs. Lillie Small, Virginia Marie Newsom, Vivian Taylor, Frank W. Taylor, and Mrs. Elfreda Pirtle.

Callaway & Callaway, of Brownwood, for appellant Mrs. Luta Witten.

Marcus Weatherred, of Coleman, for appellee.

BAUGH, J.

This appeal is from a judgment of the district court, entered herein after an appeal from the county court, admitting to probate the will of Mrs. Virginnie Taylor, deceased, executed on August 25, 1928. Probate of the will was contested by Mrs. Lillie Small, a daughter, and by five grandchildren of the deceased. The contestees were Fred Taylor, a son of deceased, and independent executor of the will; and his two sons and a daugh-

ter, who, with their father, were the principal beneficiaries named in the will. The grounds of the contest were, first, that Mrs. Virginnie Taylor was of unsound mind when she executed the will; and, second, that said will was the product of undue influence over the testatrix by Fred Taylor, his wife, Mrs. Fred Taylor, and his daughter, Rita Mae McMath. The case was tried to a jury upon special issues, who found against the contestants on both grounds of the contest; and said will was admitted to probate. From this judgment the contestants have appealed.

■ The first contentions made by appellants are that the finding of the jury that testatrix was of sound mind at the time she executed the will was without legal evidence to support it, and that such finding was contrary to the great weight and preponderance of the evidence. We do not sustain either of these contentions. No useful purpose would be served by setting out or summarizing the evidence here. The statement of facts contains 475 typewritten pages. Appellants rely largely on the testimony of testatrix herself. It appears that in June, 1928, Mrs. Virginnie Taylor, then about 80 years of age, executed and delivered to her son, Fred Taylor, and to Fred's three named children, separate deeds conveying to them, effective upon her death, a considerable portion of her estate. In July of that year Mrs. Lillie Small, her daughter, as next friend for Mrs. Taylor, sought to cancel all of said deeds on the ground that Mrs. Taylor was of unsound mind when she executed the deeds. That suit was tried four times prior to the death of Mrs. Taylor, at each of which trials she testified at length. After the first trial on August 22, 1928, Mrs. Taylor executed the will in question, which in effect carried out the provisions of the deeds attacked. Thereafter three other trials were had, and it appears that only the Grim Reaper ended that suit. The unusual situation is therefore presented of voluminous testimony of the testatrix herself on the issue of her own sanity. In addition, numerous witnesses well acquainted with testatrix testified on that issue, some thirty of whom, both lay and professional, testified that in their opinion her mind was sound at the time. As stated, it would be valueless to the jurisprudence of the state to repeat or attempt to summarize the testimony here. Suffice it to say that in our opinion the evidence clearly raised a factual issue as to the soundness of Mrs. Taylor's mind, and so became a jury question, and was by the jury resolved against the appellants.

■ Appellants make the same contentions on the issue of undue influence over testatrix by Fred Taylor, Mrs. Fred Taylor, and their daughter, Mrs. Rita Mae McMath. The evidence did show that Mrs. Taylor had the utmost confidence in her son Fred Taylor, who had, during her declining years, looked after her business for her; and that his wife and daughter had helped to care for her. It also showed that she had, prior to the date of the deeds in question, made bountiful gifts from her estate to the contestants themselves— some of them much larger than those made to Fred and his children. But her attitude towards Fred and his children was but the natural result of gratitude and maternal impulses, and do not afford in themselves any evidence of undue influence in the execution of the will. The evidence strongly indicates that the will was, in large measure at least, the result of appellants' efforts to have her conveyances to Fred and his children set aside on the ground of her mental incapacity. There was little, if any, evidence even tending to show undue influence over testatrix at the very time she executed said will, or that any such influence was exercised in the testamentary act, the time and act to which the inquiry must be confined. It is not enough to show that the testatrix was under the influence of another in the management and control of her business generally. Trezevant v. Rains (Tex. Sup.) 19 S. W. 567; Patterson v. Lamb, 21 Tex. Civ. App. 512, 52 S. W. 98; Fox v. Bierman (Tex. Civ. App.) 257 S. W. 969; Idar v. Uehlinger (Tex. Civ. App.) 49 S.W.(2d) 998.

■ Appellants' next contention relates to misconduct of the jury. This contention must be sustained. The contestants introduced as an expert witness on mental diseases a Dr. P. C. Anders, who testified that in his opinion Mrs. Taylor was of unsound mind when she executed the will. On the first ballot seven jurors voted that she was of sound mind at the time and five that she was not. Two jurors testified on motion for rehearing without contradiction that, after the first ballot, juror A. W. Crye stated in the jury room that Dr. Anders, who was the principal witness for appellants, other than the contestants themselves, was a "dope fiend and stood in with the bootleggers," and in substance that he would write whisky prescriptions for any one for a dollar, and that he was unreliable. There was no testimony to that effect. After this statement in the jury room, all of the five changed their votes, and the two jurors who testified stated that this statement of juror Crye influenced them in changing their vote on the vital issue in the case. One of the jurors testified that he relied chiefly on the testimony of the doctors, but that, after the statement of juror Crye, he discarded the testimony of Dr. Anders and changed his vote. Neither of these two jurors knew Dr. Anders. Neither of them testified that they would not have changed their votes had not juror Crye made the statements with reference to Dr. Anders, but both of them did testify that such statements influenced them in so changing their votes.

■ While such statements of juror Crye related to the credibility of the witness, rather than directly to the factual issue to be found by the jury, the result operated directly upon the issue of sanity itself. The remarks of such juror were highly improper and prejudicial in character. Virginia Fire & Marine Ins. Co. v. St. Louis S. W. Ry. Co. (Tex. Civ. App.) 173 S. W. 487. The aim and purpose of the Constitution and the statutes is to guarantee a litigant an impartial and untrammeled verdict of the jury based upon legal evidence. And any improper communication, whether it relates directly to the issue to be answered or not, which prevents that impartial verdict, contravenes the spirit as well as the letter of the law. That it influenced at least two of the jurors to the prejudice and injury of the appellants in this case is reflected by the uncontradicted testimony of the jurors themselves. Even where there is a reasonable doubt whether such misconduct injured the appellant, and the jurors themselves testify that it did not, the Supreme Court has uniformly reversed such cases, and held that the trial court abused his discretion in refusing to grant a new trial where such misconduct has been shown. See article 2234, Vernon's Ann. Civ. Stats. 1925, and numerous annotations; T. & P. Ry. Co. v. Van Zandt (Tex. Com. App.) 44 S.W.(2d) 950; Casstevens v. T. & P. Ry. Co., 119 Tex. 456, 32 S.W.(2d) 637, 73 A. L. R. 89; and cases there reviewed; H. & T. C. R. Co. v. Gray, 105 Tex. 42, 43, 143 S. W. 606. The improper conduct of the juror obviously in this case affected the verdict on the material issue in the case.

■ In propositions 4 to 7, appellants assert error of the trial court in refusing to submit to the jury separate inquiries as to whether Mrs. Taylor had sufficient mental capacity at the time: (a) To know and understand the proper objects of her bounty; (b) to understand the nature of the business she was engaged in; (c) to know the persons dependent upon her bounty; and (d) the general nature and extent of her property.

After giving a general instruction defining the term "sound mind," which instruction is not complained of, the trial court submitted the single issue, "Was Mrs. Virginnie Taylor of sound mind at the time of executing said will, in August, 1928?" This was the ultimate fact to be determined by the jury and a proper method of its submission. The requested instructions of appellants are but elements relating to that issue and circumstances to be considered by the jury under proper instructions from the court in answering that one issue. This issue was submitted in accordance with the holdings of the Supreme Court in Prather v. McClelland, 76 Tex. 574, 13 S. W. 543, and Rodgers v. Fleming (Tex. Com. App.) 3 S.W.(2d) 77.

■ Nor is there any merit in appellants' contention that separate issues should have been submitted inquiring whether Mrs. Taylor was unduly influenced to execute said will by Fred Taylor, or by Mrs. Fred Taylor. The issue as submitted was whether she was so influenced by Fred Taylor, Mrs. Fred Taylor, or Rita Mae McMath, or either or all of them, in making said will. We find no evidence as to such influence by Mrs. Taylor or Rita Mae McMath, and it may be doubted if there was any competent evidence as to such influence by Fred Taylor upon the testamentary act. In any event, the inquiry was comprehensive enough to elicit a competent finding on that issue in the form submitted, and no harm could have resulted to appellants.

■■ Appellants in seven propositions attack the qualifications of as many lay witnesses to testify as to the soundness of Mrs. Taylor's mind, based upon their observation of her conduct, conversation, and demeanor. It is not necessary to discuss each of these separately. The witnesses testified that they had known Mrs. Taylor more or less intimately for periods of time varying from 3 to 40 years, and had had occasion to observe her conduct, conversation, and demeanor. The witness who had known her but 3 years lived next door to her and saw and conversed with her frequently. It is now well settled that such witnesses, though nonexpert, may testify as to the sanity of a testatrix at the time she made her will, where they have had sufficient opportunity to observe her demeanor, conduct, and mental condition, and that a determination of that matter is left largely to the discretion of the trial court. Thornton v. McReynolds (Tex. Civ. App.) 156 S. W. 1144 (writ ref.); 22 C. J. 605, 609; Doyle v. Schafer, 228 Ky. 83, 14 S.W.(2d) 413; M. P. Ry. Co. v. Baldwin (Tex. Civ. App.) 261 S. W. 418, 419. But such testimony should, of course, relate to the time of the act in question. We find no abuse of the discretion of the trial court as to the witnesses complained of.

■ The only remaining question relates to the refusal of the trial court to give the instruction requested by appellants that the jury should consider, in determining the sanity of Mrs. Taylor, whether she was laboring under the influence of an insane delusion, defined in the instruction, affecting the disposition of her property. This requested instruction was obviously based upon the holding of the Supreme Court in Rodgers v. Fleming, 3 S.W.(2d) 77. We think this instruction should have been given. There was evidence in the record tending to indicate that Mrs. Taylor did not understand the nature and purpose of the suit brought by Mrs. Lillie Small to cancel the deeds to Fred Taylor and his children; and that she thought Mrs. Small was seeking to take all of her property away from her and put her upon the county for support. In the light of her own testimony and that of Dr. Anders, we think the trial

court should have given the instruction requested.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for another trial.

Reversed and remanded.