Helen **NOHRA,** by next friend, Dr. Herbert Nassour, Appellant,

v.

James T. **EVANS** et al., Appellees.

No. 12086.

Court of Civil Appeals of Texas, Austin.

May 1, 1974.

Ronald J. Freeman, Byron Lockhart, Austin, for appellant.

William S. Frank, Houston, for appellees.

O'QUINN, Justice.

Appellant brought this suit by next friend seeking to annul a deed and other instruments, through which appellees acquired title to eight parcels of real property, and alleged as ground for rescission her lack of mental capacity to execute the instruments.[1]

Upon a verdict, in which the jury failed to find that appellant lacked mental capacity to make the instruments, the trial court entered judgment that appellant take nothing by her suit. Appellant brings the sole point of error that in charging the jury the court failed to submit a definition of mental capacity to include as one of the elements the ability of a person to exercise his or her will.

Decision in this appeal turns on whether appellant was entitled to the requested definition of mental capacity as follows:

"The term 'mental capacity' means the ability of the person involved to appreciate the effect of what he or she was doing, to understand the nature and consequences of his or her acts and the business he or she was transacting, *and to exercise her will in relation thereto.*" (Emphasis added)

The definition requested is identical with the definition submitted by the court, except the final clause, as italicized, added by appellant.

As stated by appellant, the basis for error is not a contention ". . . that the jury's answers are contrary to the evidence in this case. Rather, Appellant complains only that the instructions . . . [defining] the term 'mental capacity' were incomplete in that the Trial Court failed to include therein the element of will, and, therefore, did not bring to the attention of the jury in their considerations, that element and the evidence relating thereto."

The position of appellant stems from the claim that the maker of the instruments was "suffering from the mental illness of manic-depressive," and that the test of understanding, or consciousness, is insufficient, without enlarging the test to include the element of volition, or will, of the person making the instrument. "The testimony in this case," appellant argues, "shows that manic-depressives in general, and this appellant in particular, suffer volitional impediments as a result of the mental disease with which they are afflicted."

A medical witness testified that a person who is manic-depressive, while in the depressed stage, becomes "lethargic," and that the afflicted person's "judgment is faulty and impaired as far as his intentions and motives" are concerned; that in all probability, while in the depressed stage, such patients will understand what they are doing, but will be out of touch with reality because the disease will "distort their will."

Two members of appellant's family, shown by the record to have been present on the occasions when appellant executed the contract, the deed, and the deed of

1. Plaintiff below, appellant here, is Helen Nohra, appearing by Dr. Herbert Nassour as her next friend; defendants below, all of whom are appellees here, are James T. Evans, J. Monty Bray, and William S. Frank, residents of Harris County, Mercantile Financial Corporation, a Texas Corporation with its principal place of business in Lubbock County, and Santone Sales Company, Inc., a Delaware Corporation, with its principal place of business in Bexar County.

trust, testified that appellant was a shrewd businesswoman, but that at the time she executed the documents she was depressed and was "very susceptible to suggestion" and that on the dates appellant signed the papers "she would have signed anything you told her to sign." The witnesses also testified that appellant did not bother to read any of the documents and although she understood what she was doing, appellant did not care.

In her fourth amended original petition, on which she went to trial, appellant pleaded that "For more than ten years Plaintiff has been experiencing a form of mental illness which has been medically diagnosed as a manic-depressive illness. * * * * As a result of this illness, Plaintiff experiences recurring periods of depression during which her ability to reason, relate, and focus on problems and reach decisions is significantly impaired. During these periods of depression, Plaintiff lacks the ability to understand and appreciate the nature and consequences of her actions *as well as the ability to exercise her will in relation to her actions.* It was while Plaintiff was in such . . ." periods of depression that Defendants secured Plaintiff's signature on the instruments which Plaintiff by this suit seeks to cancel. (Emphasis added)

The trial court, in instructing the jury, employed the definition of mental capacity found in numerous decisions in this state. "The general definition of the term 'mental capacity' seems to contemplate the ability to understand the nature and effect of the act in which a person is engaged and the business he is transacting." Gray v. Allen, 243 S.W. 684, 686 (Tex.Civ.App. San Antonio 1922, writ dsmd.); Cole v. Waite, 151 Tex. 175, 246 S.W.2d 849, 850, 852, affirming, 242 S.W.2d 936 (Tex.Civ.App. 1952). Essentially the same rule was stated earlier that if the grantor of a deed "was laboring under such mental and physical infirmity as to make him incapable of understanding in a reasonable manner the nature and effect of the act he was

doing," the instrument was void, the record showing also want of consideration. Caddell v. Caddell, 62 Tex.Civ.App. 461, 131 S.W. 432 (Texarkana 1910, no writ). See also Johnson v. Johnson, 191 S.W. 366, 368 (Tex.Civ.App. Texarkana 1916, no. writ); Board of Regents of the University of Texas v. Yarbrough, 470 S.W.2d 86, 90 (Tex.Civ.App. Waco 1971, writ ref. n. r. e.); Hooks v. Brown, 348 S.W.2d 104, 126 (Tex.Civ.App. Austin 1961, writ ref. n. r. e.).

A definition employing the phrase "mind and memory" has been approved frequently. In Burleson v. Morse, 172 S.W.2d 361, 363 (Tex.Civ.App. Galveston 1943, writ ref. w. o. m.), the approved definition read, "By the term 'mental capacity' is meant the possession of sufficient mind and memory to understand the nature and effect of her act in executing the notes inquired about."

Similar definitions, each employing the term "mind and memory," were approved in Pollard v. El Paso National Bank, 343 S.W.2d 909, 913 (Tex.Civ.App. El Paso 1961, writ ref. n. r. e.); Haile v. Holtzclaw, 400 S.W.2d 603, 612 (Tex.Civ.App. Amarillo 1966, rev. on other grounds 414 S.W.2d 916); Klindworth v. O'Connor, 240 S.W.2d 470, 475 (Tex.Civ.App. Dallas 1951, writ ref. n. r. e.); Jackson v. Henninger, 482 S.W.2d 323, 325 (Tex.Civ.App. Austin 1972, no writ).

But a definition incorporating the additional phrase "to intelligently" understand the nature and effect of the act has been disapproved. Smith v. Thornhill, 34 S.W. 2d 803, 804 (Tex.Comm.App.1931); Wright v. Matthews, 130 S.W.2d 413 (Tex.Civ.App. San Antonio 1939, writ dsmd. jmt. cor.).

In her contention that in addition to the test of "understanding" the trial court should have included the element of exercising "her will in relation" to the act of executing the written instruments, appellant relies in the main on decisions in five cases: Herndon v. Vick, 18 Tex.Civ.App.

583, 45 S.W. 852 (Galveston 1898, writ dsmd.); Farmers' State Bank v. Farmer, 157 S.W. 283 (Tex.Civ.App. Amarillo 1913, no writ); Stewart v. Miller, 271 S.W. 311 (Tex.Civ.App. Waco 1925, writ ref.); Garrison v. Blanton, 48 Tex. 299 (1877), and Bell v. Bell, 237 S.W.2d 688 (Tex.Civ. App. Amarillo 1951, no writ).

We direct our examination and analysis of these authorities to the first three cases only. We do not include Garrison v. Blanton in our analysis for the reason that the mental capacity of the testatrix in that case was unrelated to insanity or mental illness, but was "a stupor produced by extreme illness, and morphine administered as a medicine." (48 Tex. 301) In Bell v. Bell, despite an early reference to "free volition" of the testator, the court applied the test that, "Under all the facts and circumstances . . . the deceased was *cognizant of the property he possessed, recognized the objects of his bounty and understood the act he was performing*" (Emphasis added), and decided the jury's finding that the testator, who was elderly and sick, did not have sufficient capacity to make a will was against the great preponderance of the evidence.

The basis for appellant's contention stems from approval in 1898 by a court of civil appeals of a charge given a jury by the trial court in the case of Herndon v. Vick (45 S.W. 853, col. 1). In that case Andrew J. Vick brought suit against a number of persons to establish his title to 400 acres out of the William Vince League in Harris County. A. C. Herndon, as the guardian, in Texas, of the estate of Frederick Cole, who had been declared *non compos mentis* in the State of Maine, answered with a claim, in behalf of his ward, to "the lower half of the Vince league." Vick's claim to the land was grounded on adverse possession and perfection of limitation title, unless his title was defeated as to Frederick Cole by the fact of Cole's insanity.

The trial court asked the jury, "Has said Frederick been, since and on March 30, 1870, to within less than five years before suit herein, a person of unsound mind?" In this connection the court instructed the jury that:

"The law is that limitation does not run against a person of unsound mind, such disability forming an exception; yet, although the mind of a person may be to some extent impaired by disease, still if such person had the ability to transact the ordinary affairs of life, to understand their nature and effect, *and to exercise his will in relation to them*, he is not deemed of unsound mind, in the sense of the law." (Emphasis added)

The trial court gave essentially the same instruction in connection with the jury's opportunity to find the negative; that is, that Frederick Cole was not of unsound mind.

On appeal Herndon, as Cole's guardian, contended that the evidence did not warrant submission to the jury the issue of Frederick Cole's unsoundness of mind because it was shown at the trial that judicially Cole had been declared *non compos mentis* in Maine and no evidence was offered to show a change in Cole's condition.

The court of civil appeals agreed and held that it was error for the trial court to submit the issue which had been established *prima facie* sufficient and had not been rebutted. The judgment of the Maine court was effectual, the court held, ". . . to fix the condition [of Cole's mind], and affords evidence of its existence, and hence of its continuance until rebutted. Elston v. Jasper, 45 Tex. 409."

But the appellate court nevertheless observed, without citing authority in support of the statement, that "The charge states accurately the law applicable to the issue, *if it was right for it to be submitted in this way to the jury*." (Emphasis added) The court held that it was not right to submit the issue to the jury in that way and reversed the judgment of the court below.

Fifteen years later, in 1913, the definition first announced in Herndon v. Vick

was repeated in Farmers' State Bank of Quanah v. Farmer (157 S.W. 286, col. 1).

The court there stated, "As we understand the rule bearing upon this issue, it seems to be that the test of the capacity of one to execute a valid conveyance is that such individual must have the ability, not only to transact the ordinary affairs of life, and to understand their nature and effect, but *also to exercise his or her will in relation thereto.* (Emphasis added) Herndon v. Vick, 18 Tex.Civ.App. 583, 45 S.W. 852; 22 Cyc. 1170."

It will be noted that, in addition to Herndon v. Vick in which the rule was not supported by any authority, the court in *Farmer* relied on "22 Cyc. 1170." The rule as stated by that authority does not incorporate the element of exercising the will:

"If a person, at the time of making a conveyance, has sufficient capacity fully to comprehend the nature and effect of the act, the conveyance is valid; but if the grantor has not capacity equal to a full and clear understanding of the nature and consequences of the act, the conveyance is invalid." 22 Cyclopedia of Law and Procedure, Insane Persons, Sec. IV(B), p. 1170.

No issue relating to an instruction to the jury on mental capacity was before the appellate court in Farmers' State Bank v. Farmer. The controlling questions, as stated by the court, were: (1) were the lots conveyed a business homestead, and (2) were the lots the separate property of the wife and was she at the time of conveyance mentally incapacitated? The court found that the evidence upon either theory was sufficient to support the judgment.

Twelve years later the test first found in Herndon v. Vick in 1898 made its second and last reappearance in case law of this state. In 1925, Stewart v. Miller, *supra,* (271 S.W. 315, col. 1), the court of civil appeals said:

"Mrs. Miller's capacity to execute the deeds involved herein depends on her ability at the time to understand the nature and effect of her action and *to exercise her will in relation thereto.* (Emphasis added) In determining this issue, evidence of her mental and physical condition both before and after such execution may be considered. Farmers' State Bank v. Farmer (Tex.Civ.App.) 157 S.W. 283, 286; Caddell v. Caddell, 62 Tex.Civ.App. 461, 131 S.W. 432, 434; 18 C.J. p. 218, sec. 131, Id. p. 221, sec. 134."

Immediately following this statement the court, addressing itself to determination of whether the issue of Mrs. Miller's mental capacity should have been submitted to the jury, continues in this language:

"If the evidence tending to show that *Mrs. Miller was not at the time mentally capable of understanding the nature and effect of her act in executing said deeds,* standing alone and uncontradicted, was *sufficient to support a finding of incapacity,* the court erred in instructing a verdict for defendants." (271 S.W. 315, col. 2) (Emphasis added) The test so stated is clearly without the additional element that she must "exercise her will in relation thereto."

From this point the court considered the question of undue influence, an additional issue in the case and one in which the element of exercising "her will in relation" to execution of the deeds becomes a determining issue. It therefore appears that the court's initial inclusion of the element of volition had reference to the issue of undue influence, whereas the first portion alone of the statement was directed to the issue of mental capacity.

This conclusion is fully supported by the authorities cited at that point by the court. In Caddell v. Caddell, *supra,* there cited, the test briefly stated is, " . . . it is also a correct principle of law that such conveyance is void . . . where at the time of its execution the grantor was laboring under such a degree of mental in-

firmity as to make him incapable of understanding in a reasonable manner the nature and effect of the act he was doing. 2 Pomeroy, Eq.Jur. sec. 947 . . . "

In addition, the court cited two sections from Corpus Juris in which the definition of mental capacity is found in language strikingly similar: ". . . to render a deed void on this ground [mental incapacity] it should appear that the grantor was laboring under such a degree of mental infirmity as to make him incapable of understanding the nature of the act, the test being not merely that the grantor's mental powers were impaired, but whether he had sufficient capacity to understand in a reasonable manner the nature and effect of the act which he was doing." (18 C.J. p. 218, sec. 131) The same test is repeated in 26 C.J.S. Deeds, § 54b, p. 721, with Stewart v. Miller cited as authority in footnote 74.

The analysis just concluded confirms our determination that no authority is found in case law of this state for adding to the definition of mental capacity, already established in our jurisprudence, the additional element that a grantor in making a conveyance must have the ability at the time to exercise his or her will in relation to the act.

No contention is made in this case that appellant was overwhelmed by duress, or misled by fraud, or that undue influence in any manner was exerted, to induce her to execute the deed and other instruments by which title was transferred from her to other persons.

Appellant points out that "This appeal, and the question herein presented, is unique in the history of the Texas decisions in regard to mental capacity. Never before has it been brought to the attention of the Texas courts that in the specific case of the manic-depressive illness, the issue of mental capacity must necessarily include not only the element of 'understanding', but also the element of 'volition'."

We interpret appellant's position to be that although the jury had the opportunity to consider whether appellant was able to understand the nature and consequences of her acts, the jury was denied, because of the limited instructions given, the opportunity to consider whether by reason of her mental illness appellant was unable to act in a reasonable manner at the time she made the instruments. We do not understand appellant to urge that because there was proof that she was a manic-depressive, and was in a manic or depressed state when each instrument was signed, her acts as a matter of law were void, or voidable, but only that appellant was entitled to a finding by the jury as to whether she executed the writings because she lacked the ability to exercise her will in relation to her act, as a result of her mental illness.

■ Enlargement or extension of the traditional test of mental capacity has been allowed in Texas in instances of insane delusions in cases involving the making of wills. Prather v. McClelland, 76 Tex. 574, 13 S.W. 543 (1890); Rodgers v. Fleming, 3 S.W.2d 77 (Tex.Comm.App.1928); Knott v. Jensen, 27 S.W.2d 624 (Tex.Civ.App. Amarillo 1930, writ dsmd.). But submission of insane delusions by separate special issue has been disapproved, and where the evidence raises the issue of insane delusions, the trial court has the duty to define mental incapacity in view of such evidence. Ferguson Seed Farms v. McMillan, 18 S. W.2d 595 (Tex.Comm.App.1929). See also Small v. Taylor, 54 S.W.2d 151 (Tex.Civ. App. Austin 1932, no writ); Lindley v. Lindley, 384 S.W.2d 676, 679 (Tex.Sup. 1964). An insane delusion is defined as a belief of a state of supposed facts that do not exist, and which no rational person would believe. Knight v. Edwards, 153 Tex. 170, 264 S.W.2d 692 (1954). A mere misunderstanding or a mistake of fact, or an illogical conclusion, would not constitute an insane delusion. Navarro v. Rodriguez, 235 S.W.2d 665, 667 (Tex.Civ.App. San Antonio 1950, no writ).

In this case we are urged to extend the established rule beyond the test of understanding, or cognition, to encompass motivation, or exercise of will, on the theory that appellant acted under compulsion of a mental disorder but for which the writings would not have been executed.

As observed earlier, no court in this state has approved a test for mental capacity other than under the cognitive standard, except as the rule has been enlarged in will cases to include insane delusions when delusions are shown to be intimately related to the making of a will.

Thus we arrive at the point of deciding whether the traditional standard governing competency to contract fails to account for the person who, because of mental illness, lacks the ability to control his or her conduct, even though the ability to understand appears to be unimpaired. We believe that the understanding test does fail to afford the finder of facts the opportunity to determine whether a person who is mentally ill, having met the standard of cognition, nevertheless lacks the ability to control his conduct, at the time the contract was made, because of his mental affliction.

Only within the twentieth century have developments in the science of mind and mental behavior made it clear that all mental faculties are not simultaneously affected by mental illness, the contrary being a belief held by the courts during the years in which the cognitive standard evolved and became established. Green, Mental Incompetency, 38 Mich.L.R. 1189, 1197–1202; Comment, Mental Illness and the Law of Contracts, 57 Mich.L.R. 1020, 1033–1036.

It was in the case of a manic-depressive psychotic in 1963 that a court in New York found that application of either the understanding test or the insane delusion test would result in excluding the manic-depressive. The court rejected the two traditional tests in favor of a motivational standard. Faber v. Sweet Style Mfg. Corp., 40 Misc.2d 212, 242 N.Y.S.2d 763 (1963). There the court stated that incom-petence " . . . to contract also exists when a contract is entered into under the compulsion of a mental disease or disorder but for which the contract would not have been made."

The decision has met with favorable reception in legal journals and has been examined without disapproval by at least one other court. It is recognized under this decision that with "workability of the motivational standard" proved, there remains no valid reason to exclude the manic-depressive from the category of persons incompetent to contract, although medical diagnosis of the illness should not result in automatic avoidance, for " . . . such a showing should merely entitle the manic to have the court decide whether he was in fact ill and whether a found illness was sufficiently connected to the transaction to warrant rescission." Note, Competency to Contract, 39 N.Y.U.L.R., 356, 363.

The decision in *Faber* was followed in 1969 by adoption of the test of competency to contract as found in the Restatement of Contracts. Ortelere v. Teachers' Retirement Board of New York, 25 N.Y.2d 196, 303 N.Y.S.2d, 362, 250 N.E.2d 460 (1969). The court in *Ortelere* quoted from the decision in *Faber* and observed that in the earlier case for " . . . the first known time a court has recognized that the traditional standards of incompetency for contractual capacity are inadequate in light of contemporary psychiatric learning and applied modern standards." (303 N.Y.S.2d 368, 250 N.E.2d 465)

The standard found in the Restatement provides:

"A person incurs only voidable contractual duties by entering into a transaction if by reason of mental illness or defect (a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or (b) he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition." Restatement (Sec-

ond) of Contracts, sec. 18C(1), Tent. Draft No. 1, 1964.

The court in *Ortelere* repeated the following recommendation found in 57 Mich. L.R. 1020, 1036, *supra*:

" . . . a complete test for contractual incapacity should provide protection for those persons whose contracts are merely uncontrolled reactions to their mental illness, as well as for those who could not understand the nature and consequences of their actions."

It is noted that the decisions in *Ortelere* and in *Faber* have been examined in legal journals and found to be a significant movement toward more equitable results in contract cases involving the mentally ill. See 45 N.Y.U.L.R. 585 (1970); 16 Wayne L.R. 1188. A California court in 1968 examined the results in *Faber* and reviewed the law review articles dealing with the problem, but decided that because California statutes which categorize incompetence have been interpreted by the decisions to establish the "cognitive test as the prevailing standard of legal competency," the rule in *Faber* could not be employed. Smalley v. Baker, 262 Cal. App.2d 824, 69 Cal.Rptr. 521, 528–529 (1968).

We are of the view that a test similar to that approved in *Faber* and in *Ortelere* is appropriate in Texas when the facts justify an instruction to include both the cognitive standard and the element of motivation or volition. We are not in agreement with all the results and implications of those decisions. We do not have before us, and therefore do not pass on, questions relating to determination of equities between the parties, nor the question of knowledge, or reason to know, on the part of persons dealing with the mentally ill person.

We hold only that it was proper for the trial court to give the instruction, or one having substantially the same meaning and effect, which appellant requested, and that its refusal by the trial court was error.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

SHANNON, Justice (dissenting).

I respectfully dissent.

The court in its charge defined mental capacity as " . . . the ability of the person involved to appreciate the effect of what he or she was doing, to understand the nature and consequences of his or her acts and the business he or she was transacting." The definition is supported by Texas authority. Gray v. Allen, 243 S.W 684 (Tex.Civ.App.1922, writ dism'd); Cole v. Waite, 151 Tex. 175, 246 S.W.2d 849, affirming, 242 S.W.2d 936 (Tex.Civ.App. 1952).

Appellant insists that the phrase, " . . . and to exercise her will in relation thereto," should have been included in the court's definition. As stated by the majority opinion, " . . . no authority is found in case law of this state for adding to the definition of mental capacity, already established in our jurisprudence, the additional element that a grantor in making a conveyance must have the ability at the time to exercise his or her will in relation to the act."

I would affirm the judgment.