# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-05-00540-CV

Junella Rosie Hempel Carroll, Appellant

v.

Claude A. Mertz and Charlie H. Ripper, Independent Executors of the Estate of
Ewald Hempel, Deceased, Appellees

FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT
NO. 2002V-040, HONORABLE GUS J. STRAUSS JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a summary judgment in a will contest. Appellees, Claude A. Mertz and Charlie H. Ripper, are the independent co-executors of the estate of Ewald Hempel under Hempel's 1990 will (the Estate). Persons claiming to be beneficiaries under an earlier joint and reciprocal will executed by Mr. Hempel and his wife in 1960 filed suit to set aside the probate of Hempel's 1990 will and subsequent codicils and to obtain a declaratory judgment affirming their inheritance rights under the1960 will and a 1969 codicil. Appellant, Junella Rosie Hempel Carroll, intervened, alleging that she was Hempel's sole child and heir and seeking to void all of his wills and codicils for insane delusion or, alternatively, to inherit claimed lapsed gifts under the 1960 will and 1969 codicil. The district court granted the Estate's motion for traditional and no-evidence summary judgment and ordered that Carroll take nothing on her claims. For the reasons explained below, we affirm the judgment of the district court.

**BACKGROUND**

Ewald Hempel married Julia Chanek on June 13, 1927. He filed for divorce less than one year later. A joint statement of facts filed in the divorce proceeding recited that Hempel and Chanek agreed that they "have no children. That one child was born unto [Chanek], but [Hempel] says that this is not his child." The divorce became final on November 19, 1929.

Thereafter, Hempel married Johanna Bohot. On January 14, 1960, the couple executed a joint and reciprocal will that, as amended by a 1969 codicil, provided that, upon the death of either spouse, their estate would devise to the surviving spouse. Upon the death of the surviving spouse, the will and codicil further instructed that one-half of the estate was "to be divided equally between" Johanna's three siblings: "Mrs. Emilie Kasper, Robert Bohot and Roland Bohot, and the remaining one-half to the Texas District Missouri Synod Lutheran Church Extension Fund." The will also provided:

> It is agreed that this instrument shall be and does constitute a binding contract between the two of us and the survivor shall never have the right to make any other distribution of said estate other than as provided for herein but shall have full and complete control of the same without any accounting to either of the final devisees and legatees herein.

Johanna Bohot Hempel died on March 5, 1990. Shortly thereafter, Ewald Hempel submitted to probate their 1960 joint and reciprocal will and the 1969 codicil. On June 6, the County Court of Fayette County signed an order admitting the will to probate.

On June 21, 1990, Hempel signed and executed an instrument entitled "Last Will and Testament of Ewald Hempel," wherein he declared as follows:

2

That I, Ewald Hempel, a resident and domiciliary of La Grange, Fayette County, Texas, being of sound mind and disposing memory, over the age of eighteen (18) and not actuated by any duress, menace, fraud, mistake, or undue influence, do make, publish and declare this to be my Last Will, hereby revoking all wills and codicils previously made by me.

First

I declare that I am a widower, having been married to Johanna Bohot Hempel for over sixty years. Johanna Bohot Hempel died on March 5, 1990. I have no children who were ever born to me or who were ever adopted by me. I have no deceased children.

Under the terms of his 1990 will and subsequent codicils, Hempel left one-half of his estate to the "Texas District Missouri Synod Lutheran Church Extension Fund." The remaining one-half of his estate was to be divided into three equal shares, with one share to each of Johanna's two brothers—Robert Bohot and Roland Bohot—and the third share to be divided equally among the children of Johanna's deceased sister, Emilie Bohot Kasper. If either of Johanna's brothers predeceased Hempel, then one-half of the deceased brother's share was to go to the surviving brother and the other half was to be divided equally among Johanna's sister's (Emilie's) children. In other words, unlike the 1960 will, the share of Hempel's estate going to Johanna's brothers would not, if either predeceased Hempel, pass to their heirs, but would go to the other brother (if he outlived Hempel) and to the heirs of Johanna's sister, Emilie.

After making the above bequests, Hempel continued:

Throughout our married life, my wife and I always intended that our estate be divided in two on the death of the survivor of us, and that one-half should go to the Texas District Missouri Synod Lutheran Church Extension Fund and that the other one-half should be divided equally between her two brothers and her sister. It was further our intention that in the event any of my late wife's two brothers or her sister's children did not survive the survivor of us, then their share would be divided as stated above.

3

Any gift that lapses shall be conveyed through my residuary clause.

I give, devise, and bequeath the residue of my estate to the Texas District Missouri Synod Lutheran Church Extension Fund.

In another provision of his 1990 Last Will and Testament, Hempel explained:

I have purposefully made no provision herein for any other person, whether claiming to be an heir of mine or not, and if any person should claim to be an heir of mine and as such should assert a claim to my estate or any part thereof, or should any person, whether a beneficiary under this Will or not mentioned herein, contest this will or object to any of its provisions, then to such person or persons, I hereby give and bequest the sum of One Dollar ($1.00) and no more, in lieu of the provision which I have made or which I might have made herein for such person or persons.

Ewald Hempel died on December 24, 2001, in Fayette County. At the time of his death, he owned a separate interest in real estate, bank accounts and miscellaneous items of personal property. His 1990 Last Will and Testament and subsequent codicils were admitted to probate by the County Court of Fayette County on January 22, 2002.

On February 21, 2002, the heirs of Johanna's brother, Robert Bohot—who had predeceased Hempel—filed an application to set aside the order probating Hempel's 1990 will and subsequent codicils. The proceeding was transferred to the 155th District Court of Fayette County. As ultimately amended, the plaintiffs' application pled that as "heirs of Robert Bohot, deceased, a devisee under the first will of Ewald and Johanna Hempel" they are "persons interested in the estate of Ewald Hempel" and that the order probating Hempel's 1990 will should be set aside "because Ewald Hempel had previously entered into a Joint and Reciprocal Will on January 14, 1960 and subsequent codicil on February 14, 1969, . . . providing that the survivor had no right to make any

4

other distribution of the estate, except as provided therein, an application for the probate of which will was previously filed with the court on May 24, 1990."

The Robert Bohot heirs also filed a petition for declaratory judgment alleging that Ewald and Johanna's joint reciprocal will constituted a contract between the two of them to distribute their property as described therein, and that Ewald became bound by the terms of that contract when he admitted the joint will to probate and accepted benefits thereunder. Ewald, they claimed, breached his contract with Johanna by executing the 1999 codicil to his 1990 will, which "effected the distribution of the estate as declared under the Joint Reciprocal Will and its Codicil." The Robert Bohot heirs requested the district court to impose a constructive trust against the Estate "to carry out the terms of the Joint and Reciprocal Will and its Codicil" and render a declaratory judgment "decreeing that the Joint and Reciprocal Will was a joint, mutual and contractual will by and between the deceased and his wife, Johanna Hempel, and that Plaintiffs are entitled to ownership in full fee simple of 1/3 of one-half of the property belonging to the decedent . . . ."

The Robert Bohot heirs eventually settled their claims with the Estate. While their claims were pending, Carroll intervened in the probate proceeding. She claimed that she was Hempel's sole child, having been born on June 7, 1928 to Julia Rosie Chanek, Hempel's first wife, during their marriage. Carroll alleged that Hempel had been lacking in testamentary capacity on the dates that he executed his various wills and codicils, having "an insane delusion which he habitually maintained from at least the year 1929, that the Intervenor, Junella Rosie Hempel Carroll, was not his daughter and that he had no children . . . ."

5

Carroll further pleaded that, "All of said instruments purporting to be wills and codicils of the late Ewald Hempel were executed as the result of undue influence exerted over the deceased by his second wife, Johanna Hempel, and by the beneficiaries of the second purported will and codicils thereto, their advocates and privies." "This undue influence," Carroll alleged, consisted of "advocates of the Lutheran fund . . . insist[ing] that [Hempel] should leave at least half of his estate to said charity for the good of his soul" and "beneficiaries of both wills, . . . [seeking] to reinforce [Hempel's] delusion that he had no children, by urging him through specious arguments that his daughter was illegitimate and not his actual child, obviously conceived and born in lawful wedlock."

In the alternative, Carroll alleged that, if the 1960 joint and reciprocal will and its 1969 codicil were valid, then the 1990 will and its subsequent codicils were void for violating the contract between Ewald and Johanna contained in their 1960 will and its 1969 codicil. She claimed that because both Emily Kasper and Robert Bohot—Johanna's siblings—had predeceased Ewald, the gifts made to them in the 1960 will and 1969 codicil had lapsed and should pass intestate to Carroll, Hempel's sole child and heir.

The Estate filed a traditional and no-evidence motion for summary judgment, asserting that Carroll had "no evidence to establish any element of any of her claims." Specifically the Estate argued that Carroll had no evidence to support her claims that Hempel lacked testamentary capacity, harbored an insane delusion, or was unduly influenced, and that Carroll's claim to be Hempel's daughter "is not established by the available evidence and, in any event, is irrelevant."

6

The district court granted the motion without stating the grounds and rendered judgment that Carroll take nothing on her claims.[1]  Carroll appeals.

## ANALYSIS

Carroll brings five issues on appeal challenging the district court's summary judgment.  Her contentions can be summarized as:  (1) the evidence presents fact issues regarding whether she was Hempel's child and sole heir; (2) the evidence presents fact issues as to whether Hempel suffered from an "insane delusion" that he had no children at the time he executed the testamentary documents; (3) the Estate's summary-judgment motion did not present a ground challenging her alternative claim that she inherited lapsed gifts under Hempel's 1960 will and 1969 codicil; and (4) as a matter of law, she inherited lapsed gifts under those instruments. Our dispositions of (2), (3) and (4) are decisive of Carroll's appeal, and we agree with the Estate that Carroll's claim to be Hempel's daughter is ultimately irrelevant.

### Standard of review

We review the district court's summary judgment de novo.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  To prevail on a traditional motion for summary judgment, the moving party must prove that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion."

---

[1]  The court did state on the record that, "I believe Mr. Hempel had a right to leave his property any way he wanted, and I can find absolutely no evidence of any type of insane delusion, lack of testamentary capacity or that he was unduly influenced with any credible evidence by any stretch of the imagination."

7

Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and summary-judgment evidence establish its right to judgment as a matter of law, the burden shifts to the nonmovant to defeat summary judgment. The nonmovant then has the burden to respond to the motion and to present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Summary judgment is appropriate only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Nixon*, 690 S.W.2d at 548. In deciding whether there exists a disputed fact issue precluding summary judgment, we treat evidence favorable to the nonmovant as true, and we must resolve every doubt and indulge all reasonable inferences in the nonmovant's favor. *Id*. at 548-49.

A no-evidence motion for summary judgment must be granted if, after an adequate time for discovery, (1) the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial, and (2) the nonmovant fails to produce more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003); *Perdue v. Patten Corp.*, 142 S.W.3d 596, 603 (Tex. App.—Austin 2004, no pet.). A no-evidence summary judgment will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or

8

(4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751. We view the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Id*. (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). More than a scintilla of supporting evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id*. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id*. (quoting *Kindred v. Con/Chem, Inc*., 650 S.W.2d 61, 63 (Tex. 1983)).

**Insane delusion**

Under Texas law, a testator lacks testamentary capacity if the terms of his or her will are influenced by an insane delusion. *Lindley v. Lindley*, 384 S.W.2d 676, 679 (Tex. 1964); *Orozco v. Orozco*, 917 S.W.2d 70, 74 (Tex. App.—San Antonio 1996, writ denied). An insane delusion is defined as "the belief of a state of supposed facts that do not exist, and which no rational person would believe." *Lindley*, 384 S.W.2d at 679; *Orozco*, 917 S.W.2d at 74-75. If there is a foundation in fact for the belief, the belief is not an insane delusion, "even though the basis may be regarded by others as wholly insufficient." *Orozco*, 917 S.W.2d at 75 (quoting *Navarro v. Rodriguez*, 235 S.W.2d 665, 667 (Tex. Civ. App.—San Antonio 1950, no writ)). A mere misunderstanding, mistake of fact, or illogical conclusion does not amount to an insane delusion. *Nohra v. Evans*, 509 S.W.2d 648, 653 (Tex. Civ. App.—Austin 1974, no writ); *Navarro*, 235 S.W.2d at 667. Rather, the misconception of fact must be "due to some organic defect in the brain or some functional disorder of the mind." *Lindley*, 384 S.W.2d at 679. Thus, to support

9

a claim for insane delusion, there must be evidence "not only of a mental error affecting the terms of the will, but that the persistence of this mental error was caused by defective cerebration." *Id*.

In support of its motion for summary judgment, the Estate attached the following summary-judgment evidence:

- Carroll's deposition, in which she testified that she never met Ewald Hempel and never had any contact with him. She further testified that she did not have an opinion as to whether Hempel was suffering from an insane delusion in 1960 and that she never talked to anybody who suggested that Hempel did not know what he was doing when he executed the will in 1960, the codicil in 1969 or the will in 1990. She admitted that she did not know Hempel's physical or mental condition when he executed the various wills and codicils and she could not say if Hempel was influenced or free from influence on those dates. Carroll was never told that Hempel had any mental illness or mental defect or physical defect that would cause him to be insane or delusional.

- Hempel's petition for divorce to end his marriage to Julia Chanek dated March 13, 1928, in which he alleged that Julia "told [him] to his face that she had a lover and said that she was going to see that lover."

- A statement of facts filed in the divorce proceedings between Hempel and Chanek, in which both parties stipulated that: "plaintiff and defendant have no children . . . that one child was born unto defendant but plaintiff says that this is not his child" and that "defendant . . . told plaintiff that she had a lover" and "stated that she did not know who was the father of the child which was born unto her and that she did not care."

- The divorce decree, dated November 19, 1929, which states "that the Court . . . is of the opinion that the marital allegations in plaintiff's petition are true."

- The affidavits of Hempel's friend, Claude Mertz, and Hempel's attorney, Maria Angela Flores Beck, attesting that Hempel was "mentally sharp" and that he "fully possessed all his faculties."

Carroll insists that the following summary-judgment proof raises a fact issue that Hempel suffered from an "insane delusion" that he had no children:

10

- A copy of the marriage license between Ewald Hempel and Julie Chanek, reflecting their marriage on June 13, 1927, and a copy of the divorce decree dissolving their marriage, dated November 19, 1929.

- A certified copy of Carroll's birth certificate listing her date of birth as June 7, 1928, her father as "Ewalt [sic] Hempel" and her mother as "Julia Rosie Chanek."

- Her affidavit, in which she states that she has never spoken to or communicated with Hempel, that she visited his home twice attempting to meet him but was stopped on both occasions by Hempel's second wife, Johanna, and that she and her mother "were always on friendly terms" with Hempel's two brothers and their families, whom, she represented, "treated us as their relatives."

- Affidavits from Hempel's nieces and nephews stating that it was known within their family that Hempel had a daughter from his first marriage but that he did not acknowledge the child and did not want to be questioned about her.

- The affidavit of Carroll's son, Russell Carroll, in which he recounts a telephone conversation that he had with Hempel while doing genealogical research.[2]

---

[2] Mr. Carroll testified:

I decided to try and find and speak to my grandfather Ewald Hempel. I located his number in the La Grange telephone book and called him. A man answered the phone and identified himself as Ewald Hempel. I told him I was researching my family tree and asked him if he had been married to Julie Chanek. He said that he had been married to her, and that she was his first wife, but divorced. He seemed very polite. I then told him that I was a child of the daughter born to him and Julia Chanek, so that he was my grandfather. He then changed his tone of voice and asked me what I wanted. I told him that I did not want anything except to buy him a cup of coffee and talk to him for a few minutes, so as to open the door for an opportunity to meet and get to know him. He did not deny that I was his grandson; instead, he said "Son, I'm an old man. I have my own life, and I do not want to change it." By that I understood that he did not want to have any contact with me, so I told him I would not call him or bother him again.

11

Nothing in this proof raises a fact issue as to whether Hempel's failure to include Carroll in his wills "was due to some organic defect in the brain or some functional disorder of the mind" or could not have been entertained by a rational person under the circumstances. *See Lindley*, 384 S.W.2d at 679. Even if Carroll had raised a fact issue regarding whether she was Hempel's child—on which we express no opinion—her proof, if anything, would be at least equally consistent with the inference that Hempel's unwillingness to include her in his wills stemmed from a conscious, rational, and consistently-expressed desire not to reopen the long-closed chapter of his life involving Ms. Chanek. We reject Carroll's contentions to the contrary.

**Lapsed gifts under 1960 will and 1969 codicil**

Carroll alleged in the alternative that if the 1960 joint and reciprocal will and its 1969 codicil are valid, then the dispositive portions of the 1990 will and its subsequent codicils are void for violating the contract between Ewald and Johanna contained in their 1960 joint mutual will and its 1969 codicil. Thus, she reasoned, because Johanna's siblings, Emily Kasper and Robert Bohot, predeceased Hempel, the gifts made to them in the 1960 will and 1969 codicil have lapsed and should pass intestate to Carroll. Carroll contends that the district court erred in granting summary judgment against this claim both on the merits and because the Estate failed to challenge it in its summary-judgment motion. We reject both contentions.

The survivor of a joint and mutual will may issue a new will revoking the earlier mutual will. *Morris v. Texas Elks Crippled Children's Hosp., Inc.*, 525 S.W.2d 874, 879 (Tex. Civ. App.—El Paso 1975, writ ref'd n.r.e.); *Shawver v. Parks*, 239 S.W.2d 188, 189 (Tex. Civ. App.—Eastland 1951, writ ref'd) ("It is the contractual portion of

the will and not the will itself which is irrevocable."). Barring any issues of testamentary capacity, the latter will is valid and must be admitted to probate. *Hunt v. Knolle*, 551 S.W.2d 764, 766 (Tex. Civ. App.—Tyler 1977, no writ). Carroll correctly points out that in such a situation, the beneficiaries under the earlier mutual will nonetheless may have a cause of action in equity to enforce their rights under the contractual provisions of the revoked will and may seek to have a constructive trust imposed against the estate. *Murphy v. Slaton*, 154 Tex. 35, 43 (Tex. 1954); *Morris,* 525 S.W.2d at 879. Here, however, it is undisputed that Carroll was *not* a beneficiary under the 1960 joint and mutual will or its 1969 codicil. She thus has no rights under those instruments to enforce. *See also Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) (per curiam) ("A third party may recover on a contract made between other parties only if the parties intended to secure a benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit. A third party does not have the right to enforce the contract if she received only an incidental benefit."). Accordingly, Carroll cannot assert a claim to any gifts that, in theory, would have lapsed under the 1960 will and 1969 codicil if the contractual obligations of the joint and mutual will had been enforced. We likewise conclude that the Estate properly raised this ground in its summary-judgment motion.[3] Even if not, Carroll's lack of standing to assert her claim presents a defect of subject-matter jurisdiction that can be raised at any time. *See Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 517 n.15 (Tex. 1995).

---

[3] In its summary-judgment motion, the Estate asserts that Carroll has "no evidence to establish any element of any of her claims." It enumerates the claims and elements it is challenging, including Carroll's claim to "a share of [Hempel's] estate if: (x) the Court admits to probate the 1960 and 1969 joint and mutual will and codicil; and (y) the Court determines that a gift therein has lapsed and such gift would pass by intestacy."

13

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:  November 1, 2007

14